FRANCIS V. WOYCIK ET AL. *v.*
JOSEPH F. WOYCIK ET AL.
(4342)

BORDEN, O'CONNELL and STOUGHTON, Js.

Argued January 5—decision released February 23, 1988

*Peter W. Rotella,* with whom, on the brief, was *A. A. Washton,* for the appellants-appellees (defendants).

*William J. Willetts, Jr.,* with whom, on the brief, was *Griswold Morgan,* for the appellees-appellants (plaintiffs).

BORDEN, J. This is an action to quiet title. The trial court concluded that the plaintiffs had acquired title by adverse possession to an area of land occupied by

a metal shed. The defendants appeal,[1] contending that the findings of the trial court are clearly erroneous. The principal issue on this appeal is whether the trier of fact can rely upon inferences in concluding that adverse possession has been proven. We conclude that it can, and we find no error.

The trial court found the following facts. The plaintiffs own a tract of land adjacent to one owned by the defendants. The properties were each conveyed to the parties from a common grantor in 1965. Eventually, a dispute over the common boundary of their properties developed.

Within the disputed area there is a metal shed which is located entirely on what was the defendants' land. The metal shed was erected in 1976 on the site of an older, larger shed, using part of the footings of the former shed. The plaintiffs had used the former shed since 1965. The present shed was erected under the direction of the named plaintiff and was thereafter used by him and his tenants. The defendants looked on as the present shed was built.

The court concluded that the plaintiffs had failed to prove adverse possession of the disputed area, with the exception of the area occupied by the shed, because the land had been used in common by the parties. The court did find by "clear and positive proof,"[2] however, that

---

[1] The plaintiffs filed a cross appeal. They failed, however, to brief the sole issue raised by that cross appeal. Accordingly, the cross appeal must be dismissed. Practice Book § 4055.

[2] In *Clark* v. *Drska,* 1 Conn. App. 481, 473 A.2d 325 (1984), this court held that "clear and positive proof" required to prevail on a claim of adverse possession is the same standard as "clear and convincing proof," that is, "a degree of belief that is between the belief required in the average civil case and the belief of guilt beyond a reasonable doubt required in a criminal action." Id., 487. This burden of persuasion requires a reasonable belief that the facts asserted are highly probably true or that the probability that they are true is substantially greater than the probability that they are false. Id.

the area occupied by the present shed and its predecessor were under the sole use and control of the plaintiffs, to a degree that the plaintiffs maintained exclusive and uninterrupted possession of that limited area and ousted the defendants from possession uninterruptedly for a period of more than fifteen years. Accordingly, the court found for the plaintiffs on their claim of adverse possession to that limited portion of the disputed area.

"In order to establish adverse possession, the claimant must oust an owner of possession and keep such owner out uninterruptedly for fifteen years by an open, visible, and exclusive possession under a claim of right with intent to use the property as his own and without the consent of the owner." *Clark* v. *Drska,* 1 Conn. App. 481, 485, 473 A.2d 325 (1984). "The use is not exclusive if the adverse user merely shares dominion over the property with other users. . . . Such a possession is not to be made out by inference, but by clear and positive proof. . . . In the final analysis, whether possession is adverse is a question of fact for the trier." (Citation omitted.) *Whitney* v. *Turmel,* 180 Conn. 147, 148, 429 A.2d 826 (1980).

I

The defendants first argue that the evidence does not support the court's conclusion that the shed was under the exclusive possession of the plaintiffs. The only evidence probative of exclusive possession of the area occupied by the metal shed was that the shed was erected at the direction of the named plaintiff and used to store his lawnmower, rakes and snow shovel. While the defendants acknowledge that it may have been reasonable to infer from those facts that the defendants did not make use of the shed and that the plaintiffs' use was to the exclusion of the defendants, they argue that proof of that essential element of a claim of adverse

possession by such an inference does not constitute clear and positive proof of exclusive possession. We disagree.

The defendants' argument rests upon language found in *Whitney* v. *Turmel,* supra, that exclusive possession "is not to be made out by inference." Id. In support of this proposition, *Whitney* relies on dictum in *Robinson* v. *Myers,* 156 Conn. 510, 517, 244 A.2d 385 (1968), which in turn quotes identical language in *Hurlburt* v. *Bussemey,* 101 Conn. 406, 412, 126 A. 273 (1924), which quotes *Huntington* v. *Whaley,* 29 Conn. 391, 398 (1860). This concept that adverse possession "is not to be made out by inference," however, can be properly understood only by a thorough examination of *Huntington* v. *Whaley,* supra, where the principle appears to have originated in Connecticut jurisprudence.

In *Huntington* v. *Whaley,* supra, a stone wall, three feet wide, was the subject of a boundary dispute. The wall was set wholly on the plaintiffs' land. For more than fifteen years, the defendant held exclusive possession of his own land up to the wall. On the basis of this fact and his belief that the center of the wall divided the parties' property, the defendant claimed to have ownership of the wall to its center by adverse possession. After the jury returned a verdict for the defendant, the plaintiffs challenged the court's instruction to the jury to the effect "that if they should find that the defendant, and those under whom he claimed title, had occupied the land on the west side of the wall up to the wall, supposing and believing the wall to be the dividing line between the lands in question, and had always treated the centre of the wall as the dividing line without objection, *such occupancy would be presumptive evidence of the place of the true line . . . .*" (Emphasis added.) Id., 393. In argument before our Supreme Court, the defendant sought to justify this jury instruction on the basis of the well settled proposition that

"[w]here a person occupies land to the side of a stone wall, ditch, unnavigable river, or other divisional fence between him and the adjoining proprietor, the presumption of law is that the centre of such divisional fence is the true dividing line, and such presumption and inference of law can only be rebutted by proof of an express limitation or restriction of such occupancy." Id., 394.

The *Huntington* court rejected this argument. It concluded that "[t]he suggestion in the charge therefore, that the defendant's occupancy of his own land in the manner claimed would be presumptive evidence of the place of the true line between the lands, seems to have had no application to the issue, and we think it was calculated to mislead the jury. The only legitimate inquiry for the jury was, whether the defendant, and those under whom he claimed, had, for the period of fifteen years, had the actual, open, adverse occupancy and possession of the controverted property, claiming it as their own, and actually excluding all other persons from its possession; and there was no presumption, either of law or of fact, that the property was out of the possession of its real owner, or in the adverse occupancy of the defendant or any other person." Id., 398. From this analysis, the court set forth the following, oft-quoted, principles: "The doctrine of adverse possession is to be taken strictly. An adverse possession is not to be made out by inference, but by clear and positive proof. Every presumption is in favor of possession in subordination to the title of the true owner." Id.

Despite its unfortunate reference to proof "by inference," we read *Huntington* v. *Whaley,* supra, to condemn only the use of *presumptions* to aid the proof of essential elements of a claim of adverse possession, not inferences. At issue in *Huntington* was a jury charge which permitted the jury, in effect, to assume the existence of facts, through the aid of a rule of law and with-

out any proof on the issue—that is, a presumption. See *Clark* v. *Diefendorf,* 109 Conn. 507, 510, 147 A. 33 (1929) ("the presumption is not itself evidence and operates merely to obviate the necessity of producing evidence in the particular situation before the court"); *Morford* v. *Peck,* 46 Conn. 380, 385 (1878); 29 Am. Jur. 2d, Evidence §§ 163–165. An inference, by contrast, is based on "[c]ircumstantial evidence [and] involves the offering of evidence of facts from which the trier is asked to infer the existence of, and, so, to find proved another fact or facts. Such fact or facts may be proved, if, and only if, the trier finds that the facts from which he is asked to draw the inference are proven and the inference is not only logical and reasonable, but strong enough, so that it can be found that it is more probable than otherwise that the fact to be inferred is true." B. Holden & J. Daly, Connecticut Evidence § 64 (b); see also *Morford* v. *Peck,* supra, 385; 29 Am. Jur. 2d, Evidence §§ 161, 162.

We can conceive of no reason why facts proved to the satisfaction of the trier which logically and reasonably lead to the establishment of other facts—that is, inferences—may not aid in the proof of a claim of adverse possession. Furthermore, none of the Connecticut cases employing the "not to be made out by inference" language of the *Huntington-Robinson-Whitney* line of cases directly addresses or turns on the use of drawing inferences to support a finding of adverse possession. See *Roche* v. *Fairfield,* 186 Conn. 490, 498, 442 A.2d 911 (1982); *LaPre* v. *Nibo Films, Ltd.,* 10 Conn. App. 669, 672 n.3, 525 A.2d 140 (1987). The rule that an adverse possession claim requires a higher burden of persuasion than is required in the ordinary civil case; *Clark* v. *Drska,* supra; does not require that the proof establishing the claim be based entirely on direct evidence, as opposed to circumstantial evidence and the logical and reasonable inferences to be drawn there-

from. The law does not impose such a mental straight jacket on the trier of fact in an adverse possession case.

Our conclusion here is in accord with the rule on inferences to be drawn from circumstantial evidence with respect to proof of fraud, which likewise requires clear and convincing proof; *DeLuca* v. *C. W. Blakeslee & Sons, Inc.,* 174 Conn. 535, 546–47, 391 A.2d 170 (1978); *Morford* v. *Peck,* supra; and the similar rule with respect to proof of criminal liability, which requires proof beyond a reasonable doubt. *State* v. *Brown,* 169 Conn. 692, 695, 364 A.2d 186 (1975). Just as fraud is not to be presumed; *DeLuca* v. *C. W. Blakeslee & Sons, Inc.,* supra, 546; adverse possession is not to be presumed. *Huntington* v. *Whaley,* supra, 398. This does not mean, however, that inferences may not be properly used in such cases to support a finding of adverse possession by clear and positive proof. See *DeLuca* v. *C. W. Blakeslee & Sons, Inc.,* supra; *Morford* v. *Peck,* supra.

In the present case, the trial court acted well within its discretion when it inferred from the fact that the plaintiffs built the metal shed and stored their property therein, that this use was to the exclusion of the defendants. Accordingly, we conclude that the use of that inference from clearly established facts properly supported the court's ultimate conclusion that the plaintiffs had proved their claim of adverse possession by clear and positive proof.

II

The defendants also claim that the court's finding that they had been excluded without interruption from possession of the shed area for a fifteen year period was contrary to the undisputed evidence and therefore was clearly erroneous. At trial, the defendants introduced evidence that in 1978 their attorney wrote a letter to the plaintiffs' attorney demanding the removal

of the metal shed from the defendants' property.[3] The defendants claim, therefore, that this assertion of title interrupted the plaintiffs' possession, as a matter of law, before the fifteen years required for adverse possession had elapsed. We disagree.

"[P]ossession [which is] actual, visible and notorious, exclusive, continuous and hostile . . . would give the plaintiff[s] title by adverse possession unless the running of the statute was shown by other facts to have been effectively interrupted." *Ahern* v. *Travelers Ins. Co.,* 108 Conn. 1, 4–5, 142 A. 400 (1928). In order to interrupt continued adverse possession, the record owner " 'must assert his claim to the land, *perform some act that would reinstate him in possession,* before he can regain what he has lost.' " (Emphasis added.) Id., 7, quoting *Burrows* v. *Gallup,* 32 Conn. 493, 499 (1865). A demand letter, however, is not an act which would "reinstate [the defendants] in possession." Merely apprising the plaintiffs of the defendants' claim to the disputed area does not disturb the plaintiffs' possession, because there has been no "entry" as required by statute; see General Statutes § 52-575;[4] and because the plaintiffs

[3] The relevant portion of the May 17, 1978 demand letter to the plaintiffs' attorney stated:

"This is also to demand that the storage shed presently located in part on land of Mr. and Mrs. Joseph Woycik be removed. It is my understanding that you have received a copy of a plan prepared by Mr. Douglas Lowe which, among other things, shows this present encroachment.

"It is hoped that these matters will be tended to immediately so that further action may be unnecessary. Thank you for your cooperation in this matter."

[4] "[General Statutes] Sec. 52-575. ENTRY UPON LAND TO BE MADE WITHIN FIFTEEN YEARS. No person shall make entry into any lands or tenements but within fifteen years next after his right or title to the same first descends or accrues; and every person, not entering as aforesaid, and his heirs, shall be utterly disabled to make such entry afterwards; and no such entry shall be sufficient, unless an action is commenced thereupon and prosecuted to effect within one year next after such entry; but, if any person who has such right or title of entry into any lands or tenements is, at the time of the first descending or accruing of such right or title, a minor, non compos

"could have maintained no action on account of it." *Huntington* v. *Whaley*, supra, 398. Moreover, we note that our Supreme Court, in a case in which even more effort was used to interrupt a continuing adverse possession than was asserted here, pointed out long ago that "it has never been held that an isolated instance of attempted interruption of the user, resulting in no actual interruption, and followed by no attempt to test the right, would as a matter of law necessarily destroy the presumption of a grant founded on a user in other respects sufficient." *Connor* v. *Sullivan,* 40 Conn. 26, 30 (1873). A demand letter, like "[a] verbal protest by the owner against occupancy of the land by an adverse holder, without an actual entry or an action by the owner, is without avail, because the owner is still disseised; the statute is not interrupted by the owner's notice to an occupant that a [shed] has been built over on the lot of the owner, in the absence of any overt act by the owner to oust the occupant." 3 Am. Jur. 2d, Adverse Possession § 124.

There is no error on the appeal; the cross appeal is dismissed.

In this opinion the other judges concurred.

---

mentis or imprisoned, he and his heirs may, notwithstanding the expiration of such fifteen years, bring such action or make such entry at any time within five years next after full age, coming of sound mind or enlargement out of prison, or his heirs shall, within five years after his death, bring such action, or make such entry, and take benefit of the same; provided the limitation herein prescribed shall not begin to run against the right of entry of any owner of a remainder or reversionary interest in real estate, which is in the adverse possession of another, until the expiration of the particular estate preceding such remainder or reversionary estate."