[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff brings this action seeking a judgment so that title be quieted and settled as against the defendants and that neither defendants nor anyone claiming through them have any estate, interest in or encumbrance on certain property described hereafter is the disputed property, money damages, mandatory injunction requiring defendants to remove a fence placed on the disputed property and restoration of land and improvements to their prior condition and any other relief as may be determined by the court.
The defendants counter-claimed seeking a judgment determining the parties rights in said disputed land and settling title thereto.
Upon trial the count finds:
1. The plaintiff owns property upon which is a house known as 55 Coles Avenue, Newington, Connecticut.
2. The defendants own property upon which is a house known as 67 Coles Avenue, Newington, Connecticut.
3. The disputed property is bounded on the east by the plaintiff's property and on the west by a brook which bisects the defendants' land.
4. The depth of the disputed property runs from the southerly line of said Coles Avenue to the southerly property line of land N/F of the Woodins.
5. There are bushes, trees, and lawn on the west side of the brook and bushes, trees and developed lawn on the east side of the brook.
6. The plaintiff purchased his property June 15, 1972 and defendants purchased their property July 13, 1979.
7. From 1959 to 1972 the plaintiff's predecessors in title were family members. Father is now deceased and sister lives in Florida, disabled and unable to appear to testify. Father and sister worked adding fill and controlling overgrown weeds on their own lot and on the disputed property to the brook.
8. The land purchased by the plaintiff was swampy and overgrown with weeds and bushes except to the extent of work done by the predecessors in title. CT Page 3571
9. The disputed property was undeveloped swampy, irregular and overgrown with weeds and bushes except to the extent of work done by plaintiff's father and sister to the brook.
10. Between 1959 and 1972 the plaintiff's father had fill delivered periodically not only to the property upon which the plaintiff built his home but also on the disputed property to the brook and graded and seeded the same.
11. Mr. Daniel Hagearty's testimony corroborated the plaintiff's testimony as to the undeveloped condition of the plaintiff's land and the disputed property and the development made thereon by plaintiff and his father.
12. Mr. Hagearty lived across the street from the properties in question for about 30 years and observed the condition and development.
13. The plaintiff finished clearing, filling, grading and seeding the disputed land by the end of 1973.
14. The disputed property became clean, cleared and graded which included cutting of trees.
15. One tree was cut by the plaintiff on the disputed and to allow construction and use of a driveway thereon.
16. The plaintiff moved into his home in 1974.
17. During construction of plaintiff's house, he acted as the general contractor.
18. Plaintiff stored building materials during construction of said house on the disputed property.
19. Plaintiff parked vehicles on said disputed property regularly and the driveway was started to be constructed about 1972 and gravel put in for driveway in 1973; final paving in 1975.
20. After plaintiff moved into his home, he and his family made regular and normal use of the disputed property that anyone would expect for of and from any residential property including having parties, picnics, cookouts, general lounging and playing, gardening, having a dog house and runner and a tree swing. See Plaintiff's Exhibits J and M "Birthday" party.
21. Neighborhood children came to play in the disputed CT Page 3572 property and also played with the plaintiff's children and attended birthday parties and other childrens' activities.
22. The plaintiff and family mowed the grass on the disputed property, pruned trees thereon, removed poison ivy, cleaned up after storms.
23. Mr. Koenigsberg occasionally mowed the plaintiff's lawn and mowed the grass of the disputed property.
24. Prior to June, 1989, the defendants or the members of the family did not use or maintain the disputed property except when Mr. Caruso occasionally passed over a portion of the line of the brook to turn around on his own mower to cut his own lawn near the street line.
25. On December 12, 1988, the defendants filed notice pursuant to Conn. Gen. Stat. sec. 47-38 in the Newington Land Records to signify intention of disputing any "right-of-way or other easement or other interest" claimed by the plaintiff. The plaintiff was served with said notice on December 19, 1988.
26. In June 1989, the defendants erected a fence on the eastern boundary of the disputed property which divides the plaintiff's lot from the disputed property. Said fence was placed on the driveway as shown in Plaintiff's Exhibit F.
27. The plaintiff has used the disputed property for more than fifteen (15) years.
28. The plaintiff intended to use said disputed parcel and maintain the said property as his own under a claim of right and was without license or consent by the owner and with out intent to share its use.
29. The plaintiff's use of the disputed property was open, visible and exclusive and the maintenance was intensive and its development complete for more than fifteen years.
30. The plaintiff exercised acts of ownership openly and indicated control and use consistent with the character of the disputed property.
Creditability is for the court to determine. The testimony of the plaintiff is more believable than that of the defendants.
"The essential elements of adverse possession are that the owner shall be ousted from possession and kept out uninterruptedly for fifteen years under a claim of right by an CT Page 3573 open, visible and exclusive possession of the claimant without license or consent of the owner." Roche v. Fairfield, 186 Conn. 490,498 (1982). "It is sufficient if the acts of ownership are of such a character as to openly and publicly indicate an as assumed control or use such as is consistent with the character of the premises in question." Roche, 186 Conn. at 502-503. An adverse user does not maintain exclusive possession if he merely shares dominion over the property with other users. Short Beach Cottage Owners Improvement Assn. v. Stratford, 154 Conn. 194,199 (1966). However, "the claimant's possession need not be absolutely exclusive; it need only be a type of possession which would characterize an owner's use." (Citation omitted). Roche, 186 Conn. at 502.
The court finds that the plaintiff and his family did host cookouts, picnics, and parties attended by invited neighborhood children, and therefore the use of the disputed parcel was consistent with the character of the premises and with ownership further inviting neighborhood children to attend parties and play with the owner's children at the family's lawn constitutes appropriate use of a residential yard. Thus, the plaintiff's use of the disputed parcel to entertain his family and invited neighbors comports with the character of the property and indicates ownership.
Furthermore, if the court accepts that other uninvited neighborhood children occasionally played in and around the brook as fact, this activity is not inconsistent with the plaintiff's exclusive possession, for an adverse user's possession need not be absolutely exclusive. Roche, 186 Conn. at 502. The occasional use of the brook area by uninvited neighbors constitutes sporadic activity that does not challenge the ownership or control of the disputed area. Thus, inviting neighborhood children to play in the disputed area is an additional factor of exclusivity to indicate that the property was used by the plaintiff in an adverse manner.
On December 12, 1988, defendants filed a notice pursuant to Conn. Gen. Stat. sec. 47-38 in the Newington Land Records. The notice reflects the defendants' intention of disputing any "right-of-way, or other easement, or other interest" claimed by the plaintiff and to prevent the plaintiff from acquiring such a right. Newington Land Records, Vol. 701, p. 159. Conn. Gen. Stat. sec. 47-38 within Chapter 822 entitled "Easements," provided that:
 The owner of land over which a right-of-way or other easement is claimed or used may give notice in writing, to the person claiming or using the privilege, of his CT Page 3574 intention to dispute the right-of-way or other easement and to prevent the other party from acquiring the right; and the notice, being served and recorded as provided in sections 47-39 and 47-40, shall be deemed an interruption of the use and shall prevent the acquiring of a right thereto by the continuance of the use for any length of time thereafter.
Conn. Gen. Stat. sec. 52-575, pertaining to adverse possession, "requires that a person, not in possession of realty which another is holding adversely, reenter the land within fifteen years of being disseized and assert title, and to commence an action within one year of his entry in order for that reentry to be effective to interrupt the running of the statutory period" Matto v. Dan Beard, Inc., 15 Conn. App. 458, 467 (1988).
In Aksomitas v. South End Realty Co., 136 Conn. 277
(1949), the court specifically distinguished the applicability of Conn. Gen. Stat. sec. 47-37, which prescribes the requisites of acquiring an easement by adverse use, and Conn. Gen. Stat. sec. 52-575. The court held that the ". . . law is clear that [sec. 52-575], entitled `entry upon land to be made within fifteen years,' applies only to the acquiring of title to land by adverse possession, while [sec. 47-37] covers the acquiring of easements by prescription." Aksomitas, 136 Conn. at 284 (emphasis added). Conn. Gen. Stat. sec. 47-38 which is within Chapter 822 entitled "Easements" and immediately follows sec. 47-37 also applies only to giving notice to easements and not to disputing a claim of title by adverse possession. Specifically, Conn. Gen. Stat. sec. 47-38 speaks only of disputing a claim to a right-of-way or other easement, but does not utilize the language of interrupting a claim of adverse possession or interest in title. The notice filed by the defendants in the present case added the language "or other interest" following "a right-of-way or other easement" for which Conn. Gen. Stat. sec.47-38 does not provide.
"[P]ossession [which is] actual, visible and notorious, exclusive, continuous and hostile . . . would give the plaintiff title by adverse possession unless the running of the statute was shown by other facts to have been effectively interrupted" Woycik v. Woycik, 13 Conn. App. 518, 525 (1988), quoting Ahern v. Travelers Ins. Co., 108 Conn. 1, 4-5 (1978). The court in Woycik specifically stated that performance of an act is necessary to interrupt a claim of adverse possession:
 In order to interrupt continued adverse possession, the record owner `must assert CT Page 3575 his claim to the land, perform some act that would reinstate him in possession before he can regain what he lost.' (Emphasis added). [Ahern, 108 Conn. at 7], quoting Burrows v. Gallop, 32 Conn. 493, 499
(1865). A demand letter, however, is not an act which would `reinstate [the defendants] in possession.' Merely apprising the plaintiffs of the disputed area does not disturb the plaintiffs' possession because there has been no `entry' as required by statute; see General Statutes sec. 52-575.
Woycik, 13 Conn. App. at 525. However, the Connecticut Appellate Court in Matto, 15 Conn. App. 458, held that a surveying and staking of boundaries constituted an entry upon land pursuant to Conn. Gen. Stat. sec. 52-575, and that three demand letters in addition to the surveying also constituted additional entries. Matto, 15 Conn. App. at 467.
The plaintiff, in the present case, claims a right to title by adverse possession and not an easement or right-of-way. Therefore, Conn. Gen. Stat. sec. 47-38 does not apply to the present case. Further, the notice filed by defendants pursuant to Conn. Gen. Stat. sec. 47-38 does not constitute an entry upon land as required by Conn. Gen. Stat. sec. 52-575 to interrupt a claim of adverse possession.
Although the defendants did erect a fence in June 1989 which may constitute an entry upon land as required by sec. 52-575, the defendants did not perform this act within the required fifteen years after plaintiff began to make improvements, uses and control upon the parcel or after the plaintiff moved into his home and began to use the parcel as his family yard. Thus, the defendants mere notice pursuant to Conn. Gen. Stat. sec. 47-38 without additional acts of entry upon the land is insufficient to interrupt a claim of adverse possession as required by Conn. Gen. Stat. sec. 52-575.
The properties of the parties adjoin one another. The defendants' lot is to the west of the plaintiff's property. A brook near the easterly boundary of defendants' remaining land. This strip of property is referred to as the disputed property or parcel. The defendants constructed a fence in June 1989, on a driveway constructed and completed on the disputed property by the plaintiff in 1975. See Plaintiff's Exhibit F.
The disputed property is the basis of the plaintiff's adverse possession claim and runs from the western boundary of the plaintiff's lot to the brook, the depth from Coles Avenue CT Page 3576 to land N/F of Woodin and/or Decker.
The plaintiff purchased his property in 1972 and the defendants purchased their lots in 1979. From 1959 to 1972 the plaintiff's property was owned by his father and sister. The land when purchased by the sister in 1959, including the disputed parcel, was in an undeveloped condition; being swampy, with trees, irregular and overgrown. Between 1959 and 1972 the plaintiff's father had fill delivered to fill in the swamp and raise the elevation for building a house thereon and to include redevelopment of the disputed property to the edge of the brook.
The plaintiff's witness, Mr. D. Hagearty, who has resided across the street about 30 years has corroborated the plaintiff's evidence.
The plaintiff testified the disputed land was filled, cleared, graded and seeded by the end of 1973 with some trees cut down. The constructed house was granted a certificate of occupancy in January 1984. During the construction of the house the driveway was also constructed. It was begun in September 1972 and the blacktop applied shortly before November 1975. See Plaintiff's Exhibit Q, Bill for Blacktop.
During construction, the disputed parcel was used by the plaintiff to store building materials and parking vehicles regularly. After the plaintiff and his family moved into the newly constructed house the disputed property was continued to be used as one would expect of a family; including picnics, general lounging, parties, playing, gardening, dog house, and a tree swing. The maintenance was done regularly by the plaintiff and his family including mowing of the grass, pruning of trees, removal of poison ivy and storm clean up. On occasions Mr. Koenigsberg mowed the grass of the disputed area or property and the land of the plaintiff's property when the plaintiff was unable to do so.
All the work, uses and maintenance on the disputed property by the plaintiff, his predecessors in title and family was open, visible and with exclusive possession and without the license or consent of the owner. See Bridgeport Hydraulic Co. v. Sciontino, 138 Conn. 690; Barrs v. Zukowski, 148 Conn. 158.
The court is of the opinion that the use of the disputed property and the work and activity thereon from 1959 by the father and sister of the plaintiff, as more stated in detail above, and thence from 1972 when the plaintiff continued with adverse possession without the license or consent of the owner as hereinabove stated in more detail. The activities, CT Page 3577 including the construction of the driveway on the disputed pro property to the brook were clearly acts of exercising ownership. Thus, from 1959 to 1989 when the defendants in June of 1989 erected the fence on the driveway constructed by the plaintiff on the disputed property, this entry was some thirty years after the commencement of adverse possession activity. If the time period is to be calculated from the date the plaintiff received title in June 1972, then in that case the defendants' action to interrupt the plaintiff's possession and use by entering the disputed property to erect a fence on the driveway in June of 1989 would be seventeen (17) years.
Section 52-575 of the Connecticut General Statutes refers to adverse possession requiring the owner or person holding title to make entry onto the land within fifteen years. The entry by the defendants did not occur until June of 1989 (erecting a fence). This occurrence was more than 15 years after the plaintiff moved into his home, setting aside the length of time the plaintiff used to develop the lot and the disputed property as more fully discussed above. There is no contradicting testimony that the driveway was not constructed by the plaintiff and in place for more than 15 years on the disputed property.
The court concurs in an observation made by the defendant Mr. Caruso, that the brook is a natural boundary.
After carefully considering all the facts, testimony and exhibits in this case the court concludes that the plaintiff has sustained the burden of proof to establish the elements title by adverse possession by a clear and positive standard See Loenberg v. Wallace, 142 Conn. 689.
Therefore:
1. Judgment may enter in favor of the plaintiff that title to the following described premises be quieted and settled in the plaintiff as against the defendants, and that neither of the defendants nor anyone claiming through or from them have any estate, interest in or encumbrance on the property or any part thereof:
Bounded:
 Easterly by property of the plaintiff; Westerly by a brook which bisects the defendants' land; Southerly by Coles Avenue, Newington, Connecticut; Northerly to land N/F of Christian and Arlene Decker and/or land N/F of Charles and Paula Woodin.
The court orders the plaintiff at his expense to make a survey of the above property together with a proper map for recording in the Newington Land Records.
2. A mandatory injunction is ordered requiring the defendants to remove the fence erected upon the above described property and the defendants are further ordered to restore the land and improvements thereon to the former condition prior to erecting the fence.
Judgment may enter in favor of the plaintiff Morrell on the defendant Carusos' counter-claim.
JOSEPH F. MORELLI STATE TRIAL REFEREE CT Page 3578