[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs claim title to certain property by adverse possession. The record owner of the property in dispute is Pamela Goodman, and her property abuts property owned by the plaintiffs.
In order to prevail, the plaintiffs must prove by clear and convincing evidence that they openly, notoriously, exclusively and uninterruptedly possessed the property claimed for longer than fifteen years without consent of the record owner. Clark v. Drska 1 Conn. App. 481 (1984); Oak Leaf Marina, Inc. v. Ertel,23 Conn. App. 91, 94; Woycik v. Woycik, 13 Conn. App. 518 (1988).
From the evidence presented at trial and a viewing of the CT Page 6341 property, the Court finds as follows:
The plaintiffs purchased their property on January 6, 1972 from Robert and Diane Cubela. The property is shown as Lot No. 4 on a map on file in the Hebron Town Clerk's office (plaintiffs' exhibits A and B). In 1972, there was a house standing on the lot, which was built in 1968. The builder positioned the house on the lot based on the location of two iron pins set by a civil engineer, one set near the street line on Hillcrest and one set at the rear southwest corner of Lot No. 4. Using these two pins as boundary line markers, the builder, Anthony Sylvester, landscaped and graded the yard along that line after erecting the house on the lot.
Prior to purchasing the property in 1972 the plaintiffs were shown the two boundary pins by the sellers. They were accompanied at the time by Murray Ostrager, who is the defendant's father-in-law and who testified for the defendant in this trial. In 1972 Mr. Ostrager was showing the property as I the real estate agent representing the sellers, Robert and Diane Cubeta. At that time the lawn was established along a line which ran from pin to pin.
In 1984, the defendant purchased some 110 acres of land which, according to the map on file, includes, a 50 foot wide right-of-way abutting the plaintiffs' property. Up until that time the plaintiffs as well as Mr. Ostrager who was acting as his daughter-in-law's agent, were of the belief that the aforementioned pins marked the southern boundary of the plaintiffs' property with the right-of-way adjacent thereto.
Shortly thereafter; in December 1984, Mr. Ostrager determined that the original pins were incorrectly placed and not only was the plaintiffs' lawn area within the true right-of-way but the plaintiffs house was actually built partially on the right-of-way.
This newly found information occasioned a letter to be sent to the plaintiffs by the defendant's attorney informing them of that fact and inviting the plaintiffs to discuss a resolution (defendants exhibit 1).
The plaintiffs thereupon had their own survey done which confirmed that their lawn and house were within the actual right-of-way (Plaintiffs exhibit C). Thereafter, however, the plaintiff's use of the property did not change in any way. They continued to use it as they had since 1972. There was no communication to the defendant or her attorney beyond the letter sent to them. (Defendants exhibit 1). No one has ever interfered with the plaintiffs use of the property and the CT Page 6342 viewing by the Court shows the plaintiffs' yard is kept to the line between the two pins. The area to the south of the maintained yard line is unkempt, brush filled and readily distinguishable from the area maintained as yard by the plaintiffs. (Plaintiff's exhibit D, defendant's exhibit 4).
This action was commenced by writ, summons and complaint dated May 22, 1990 and returnable June 19, 1990.
The Court finds that the plaintiff's use of the land in question was clearly and convincingly open and notorious. In 1972 their driveway was just north of the pin set near the road. (It has since been moved farther north). The lawn has always been maintained in a line from the pin near Hillcrest Drive toward the one set at the rear of the property. Although the lawn itself is not kept to the rear pin, there has been some clearing and it has always been maintained by the plaintiffs' as their yard, with the knowledge of the defendant though her agent, who was aware of the locations of both pins. The plaintiffs' well is on the disputed property and since the summer of 1972 they have maintained flowers around the well pipe. They have kept their lawn to the line, fertilizing, leveling, seeding, mowing and raking it.
By the same standard of proof the use of the property was exclusive. The lawn is clearly seen as that belonging to the home of the plaintiffs. It was used by the plaintiffs for, recreation as well as property beautification. No one other then the plaintiffs, their family or guests made use of the disputed property.
The plaintiffs also used the property without interruption, or interference. The evidence as discussed above clearly and convincingly establishes that fact. In the Woycik case, supra, it was held that a letter from an attorney demanding removal of an intruding shed is insufficient to interrupt the plaintiff's adverse possession. In the present case the attorney's letter does no more than apprise the plaintiffs of the defendant's claim to the land in dispute. Woycik v. Woycik, supra, at page 526. There was no other evidence which could be construed as an attempt to interrupt the use of the property by the plaintiffs.
The defendant claims that the plaintiffs, after the 1985, surveys revealed the correct property line, used the property with the consent of the true owner. He argues that since the plaintiff, Real Nadeau, testified that he (Nadeau) believed, in 1985, that the defendant was allowing him to stay on the property, he was therefore using the property with the owner's consent. The Court does not reach the same conclusion. First of all, no one testified that they gave consent to the Nadeaus, CT Page 6343 or that the Nadeau's asked anyone for consent or permission to stay on the property. The defendant herself was not a witness. Mr. Ostrager, as her agent, did not authorize their continued use of the land. Mr. Nadeau testified that after receiving the attorney's letter, he continued to use the land as before, that he didn't think he needed anyone's permission to use it, and that he did not ask anyone's permission to use it. Neither did anyone apprise him that he was there only with the permission of the defendant. There is a distinction between permission to use property and forbearance from acting against an adverse user. The plaintiffs did not make any declaration to the defendant that they were conceding ownership or title nor did they do so by any conduct on their part. Lazoff v. Padgett, 2 Conn. App. 246
(1984).
Although they realized, in 1985, that there was a boundary-line problem, they did not concede that they were without some right or remedy. The whole matter was up in the air at that point and they continued on as they had for some thirteen years previously. The plaintiff's statement, relied on by the defendant, when taken in the context of his entire testimony on the issue, satisfies this Court by the appropriate standard of proof, that while the defendant may have exercised forbearance in the matter the Nadeaus continued to use the property in derogation of her ownership rights.
Thus the Court finds that the plaintiffs meet the requirement of an adverse possession and that they have adversely used the property depicted on plaintiffs' exhibit C in a line at the southerly edge of the lawn area beginning at an iron pin near Hillcrest Drive and thence running in a westerly direction to an iron pin located in a tree at the rear of the plaintiffs yard.
The Court is satisfied of the accuracy of said exhibit C. While it is a Class D survey it was prepared by use of a laser-prism-computer method which is accurate to within 1" per mile. In addition the Court's own viewing shows the referred to pins are in fact placed along the line of the yard as it physically exists and it has been used by the plaintiffs since 1972 until they commenced this suit.
Accordingly title is quieted in favor of the plaintiffs in accordance with the aforesaid findings and judgment shall enter for the plaintiffs on the counterclaim.
BY THE COURT, Hon. Lawrence C. Klaczak, J. CT Page 6344