[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs have filed a one count complaint alleging adverse possession of a parcel of land 60 feet x 28 feet x 48.5 feet x 45 feet trapezoidal in shape located in the town of Thomaston and known as 28 Grove Heights or property adjacent to 18 Grove Heights. The dwelling and property on each piece being numbered is directly adjacent to the disputed parcel. The plaintiffs claim that they and their predecessor in title have had sole and exclusive possession of the premises in excess of 15 years and a long time hereinbefore. That commencing in 1993 the defendants have claimed ownership of the disputed piece.
The Court first has to determine if either the plaintiffs or CT Page 11746 the defendants have proved record ownership. In order to make this determination the court has examined the deeds submitted as exhibits as well as the testimony of the parties and testimony of Attorney Mark Malley regarding the property subject of the dispute. From all of the evidence presented at trial, it is the finding of the Court that record title to the piece of property in question passed from Edward H. Hotchkiss and Joyce Hotchkiss to Curtis F. Kruger and Nancy Kruger by deed dated August 20, 1965 and they in turn transferred to the defendants here by deed dated December 1, 1992; that record title to the premises in question is currently in the defendants Richard and Caroline Wilson.
Having found that title to the disputed piece is in fact presently in the defendants Richard and Caroline Wilson, the Court must now address whether the plaintiffs who claim that they have acquired title to the premises in dispute by virtue of a claim of adverse possession, have sustained their burden of proof.
At trial the parties presented the following claims.
The plaintiffs in this case claim by adverse possession a piece and parcel of land approximately 60 feet x 28 feet x 48.5 feet x 45 trapezoidal in shape located in the town of Thomaston adjacent to the property of the plaintiffs.
The plaintiffs claim that for a long time heretofore they and their predecessors in title have had exclusive use, possession and occupancy of the piece in question and that commencing in 1993 the defendants claim they have record title of the disputed piece.
The piece in question is a trapezoidal piece of land lying directly in front of the plaintiffs' record title property and directly east of the plaintiffs' title land. The property in question also lies directly in front of the defendants' property and directly south in the defendants' record land.
Robert L. Catlin and Madeline S. Catlin, the predecessors in title to the plaintiffs' property purchased their property in 1948 from Gertrude Eddy by warranty deed dated April 2, 1948 recorded April 3, 1948 in the Thomaston Land Records, and used the disputed piece in front of their house as their own. CT Page 11747
Robert L. Catlin installed drainage pipes over the piece in front of his home from the corners of his dwelling leading to a point of the public road known as Grove Heights. The drainage pipe from the northern portion of the dwelling ran directly through the trapezoidal piece in front of their dwelling the disputed parcel subject of this action.
In June of 1982, the plaintiffs purchased their property from the Catlins (Exhibit N), and based on the representations of the Catlins (prior owners), the Jablonskis considered and used the property directly in front of their house as a front yard. They used the disputed property from the time of their purchase together with this piece in front of their home as their own.
At trial, Mr. Patrick Jablonski testified that in 1982 he and his wife planted shrubs on the disputed property. The plants grew quite large and required a lot of attention so he removed them from the disputed property several years later. From 1982 through 1992 he, his wife and various family members, parked their cars on the disputed piece of property and on the driveway in front of the Krugers house. He, his wife and his mother would use this (Krugers) driveway, then circle around in front of their house (plaintiffs) and park on the disputed property or their own driveway. Mr. Jablonski testified that for a period of six to eight months in 1987 he had his dogs run loose on the disputed property until he constructed a dog pen in his own back yard. Mr. Jablonski's tenants parked their cars on the disputed property for almost six years and when the tenants and his wife washed their cars they did so on the disputed piece. Mr. Jablonski testified that during the period 1987 to 1988 he had a pile of fill or top soil dumped on the disputed property and left it there for four to five months until his wife complained; at no time did the Krugers mention anything or object to the use the plaintiffs made of the property all of which occurred directly in front of their (the Krugers) house. He further testified that he had cut down several trees and trimmed trees in the disputed piece while the Krugers looked on and they took no exception to his activity.
Mrs. Lynn Jablonski testified at the trial that she and her husband paid the taxes on the disputed piece from the date of her purchase until the tax assessor's records indicated they were being billed in 1993 to the Wilsons; that at all times since purchasing the property she considered the disputed property as belonging to her husband and herself. She testified further that CT Page 11748 Mr. Catlin the predecessor in title had showed her where drainage pipes were put in extending from the front corners of the house in an easterly direction to town owned property, one or more of which pipes conducted water from their house to the street and which ran directly across the disputed piece of property. When Mrs. Jablonski attempted to sell her car in 1987-88 she testified that she parked the vehicle with a for sale sign on the disputed piece for a period of four months. She testified further that she and her children played on the disputed piece of property for many years and used the piece to chain their dogs and leave them room to run.
The Tax Collector for the Town of Thomaston, Sandra Bouscino testified that she maintained the tax records in her office, and that all the records maintained by the tax collector indicated that until 1993, the taxes on the disputed piece of property were paid by the Jablonskis or Catlins as predecessors in title; that although the tax office records go back only to 1979, they were described from the preceding assessor's cards and records. The Catlins paid the taxes since 1948 on the disputed piece, and the Jablonskis paid the taxes on the property from 1982 to 1993 when the property was assessed to the Wilsons in 1993, after they purchased 18 Grove Heights in Thomaston.
Chairman of the Board of Assessors Raye Ann Duffy also testified that the taxes for the disputed piece of property were charged to and with the property owned by the Catlins. The assessor's maps had carried the trapezoidal piece which was the subject of the present action as part of the properties assessed as 28 Grove Heights. It was only changed after the Wilsons purchased 18 Grove Heights. The Catlins and Jablonskis were assessed and paid the taxers on the trapezoidal piece from 1948 through 1992.
Damon Osterman testified that he was the grandson of the plaintiffs' predecessor in title Mr. and Mrs. Catlin, and that for many years he worked on the property belonging to this grandparents and mowed their lawn at his grandparents' instruction. He mowed the lawn up to the driveway used by the Krugers who were north and east of his house.
Donald Kucinskas testified that he was the selling broker for the Catlins, he showed the property to the plaintiffs the Jablonskis. The parties were together when the property was shown. It was his understanding and consistent with the CT Page 11749 information then on file with the assessor's office that the property directly east and in front of the Catlins' house (the property in dispute) was included in the sale.
Mr. Joseph Vadnais testified that he was a long term resident of the town; that he had a personal familiarity with the disputed property; that he had worked for Curtis Kruger the predecessor in title to Mr. Wilson doing yard work and mowed the grass on the disputed piece, during the period June of 1976 and September 1977. At that time Mr. Curtis Kruger pointed out the boundaries of the property as extending only to a point in front of the house which was the driveway and that beyond the driveway belonged to the Catlins and they took care of that property. He cut grass for a few feet south of the driveway because Mr. Kruger told him that was the extent of their property.
Mr. John Reilly testified that he rented the Kruger home with an option to purchase. That at the time of their lease the property was represented by Mr. Kruger to both himself, Mr. Reilly and his wife, Tammy Reilly, as being 60 x 180 and that the property only extended as far as the driveway in front of the house. The property's southern boundary was the driveway and the property beyond belonged to the Catlins as adjoining landowners. The issues of the boundary representation were important because the Reillys' intended to purchase the property.
The defendant Mr. Richard Wilson testified that he purchased the property in question in December of 1992. He indicated he had no personal knowledge of the boundary lines of the property. It was his understanding the lot size was 60 x 180 feet. He relied on the information in the listing information sheets Exhibits R and S which indicated a 60 x 180 property. He had not seen a map of the property and did not know where the actual boundaries were. He did not understand how far the property extended and apart from a border of grass around the perimeter of the driveway, did not use the southerly portion of the disputed piece.
Ms. Carol Wilson testified that she was shown the property she purchased by her broker. The property description listed the property as 60 x 180. She believed from the very first showing that the property was a 60 x 180 piece. During the course of the trial she indicated that she thought that her property was less than one half of the triangular piece shown in Exhibit K. She was not aware of any claim of adverse possession by the Jablonskis to CT Page 11750 a portion of the premises in front of the house she had purchased, but that they only claimed some distance past the driveway. She had no independent idea where his boundary was because there were no boundary markers.
The parties presented and the court admitted numerous exhibits which visually present the disputed piece of property in relation to its location and proximity to the respective properties of plaintiffs and defendants.
The exhibits clearly present that the disputed property is geographically the equivalent of the plaintiffs' front yard. Exhibits I-1 through I-12 show the location of the disputed piece relative to the respective premises. Exhibit I-5 shows a tree on the disputed property and Exhibit I-10 shows the plaintiff in the course of removing a tree next to the tree he had removed the branches from, which lies in the disputed area.
Exhibits K-1 through K-9 show various depictions of the disputed property with the relative visual relationship of the piece to the adjoining properties. Exhibit K-7 clearly shows that the disputed property lies directly in front of the plaintiffs' house, and appears as the plaintiffs' front yard. Exhibit K-1 and K-2 show the ledgerock projection where the drainage pipe terminated from the plaintiffs' house.
The entire disputed area is situated on the southerly side of the defendant's property and by reference to the deeds appears to split a rectangular piece that was contemplated to be a roadway or right of way. However, defendants maintain that despite this intended use it never became a roadway and in fact plaintiffs failed to construct any buildings or fences or structures on the claimed piece that would support a claim of adverse possession.
It is clear from a review of the deeds of the parties which purport to transfer the parcel in dispute, that the area directly in front of the respective dwellings which is referred to in the deeds of the parties as "Second Piece" was to be used for highway purposes only and that no building or fence or other structure ofany kind was to be erected on the second piece so-called. (Plaintiffs' Exhibit N and Defendants' Exhibits 1 and 2). The trapezoidal piece was intended thereby to be an extension of any roadways that would access the respective properties.
This is significant because the defendants made much of the CT Page 11751 fact that the plaintiffs or their predecessor in title never erected a fence, shed, or structure of any kind on the disputed area. It is clear from both deeds that a specific prohibition exists precluding construction of any building or fence. So that construction of any kind would have been in violation of the restriction in both deeds.
The Supreme Court has consistently held that the party seeking to acquire title by adverse possession bears the burden of proving all the elements of adverse possession. Roche v.Fairfield, 186 Conn. 490, 498, 442 A.2d 911 (1982); Lowenberg v.Wallace, 147 Conn. 689, 699, 166 A.2d 150 (1960) (. AmericanTrading Real Estate Prop. Inc. v. Trumbull, 215 Conn. 68, 80,574 A.2d 796 (1990).
Adverse possession "is not to be made out by inference, but by clear and positive proof." Roche v. Fairfield, 186 Conn. 490,498; Whitney v. Turmel, 180 Conn. 147, 148, 429 A.2d 826 (1980);Wadsworth Realty Co. v. Sundberg, 165 Conn. 457, 462,338 A.2d 470 (1973); Robinson v. Meyers, 156 Conn. 510, 517, 244 A.2d 385
(1968).
"The doctrine of adverse possession is to be taken strictly. [Such a] possession is not to be made out by inference, but by clear and positive proof. Huntington v. Whaley, 29 Conn. 391, 398
(1860). Robinson v. Myers, 156 Conn. 510, 517, 244 A.2d 385
(1968). `Clear and positive proof' embodies the same substantive standard as `clear and convincing proof.' Wildwood Associates,Ltd. v. Esposito, 211 Conn. 36, 42, 557 A.2d 1241 (1989)." [Internal quotation marks omitted.) Schulze v. Syvertsen,219 Conn. 81, 91, 591 A.2d 804 (1991).
"The essential elements of an adverse possession sufficient to create title to the land in the claimant are that the owner shall be ousted of his possession and kept out uninterruptedly for a period of fifteen years by an open, visible and exclusive possession by the claimant without the license or consent of the owner." Matto v. Dan Beard, Inc., 15 Conn. App. 458, 475,546 A.2d 854, cert. denied, 209 Conn. 812, 550 A.2d 1082 (1988);Ruick v. Twarkins, 171 Conn. 149, 155, 367 A.2d 1380 (1976);Wadsworth Realty Co. v. Sundberg, 165 Conn. 457, 462,338 A.2d 470 (1973). "In order to establish adverse possession, the claimant must oust an owner of possession and keep such owner out uninterruptedly for fifteen years by an open, visible and CT Page 11752 exclusive possession under a claim of right with intent to use the property as his own and without the consent of the owner." (Citations omitted.) Woycik v. Woycik, 13 Conn. App. 518, 520,537 A.2d 541 (1988).
The testimony in this case was that the Catlins had used the disputed piece as their own; that they had installed drainage pipes from their dwelling, across the disputed piece to the roadway point where it met the parties' respective driveways; that they had mowed and tended the yard comprising that portion south and west of the neighbors' driveway (the Krugers) all the years they owned the property; and that the Catlins had paid the real estate taxes on the disputed piece since 1948.
"The requirement that an adverse possession be `notorious' in the sense of `being or constituting something that is commonly known: well known' (Webster, Third New International Dictionary) is obviously to give actual notice to an owner that a claim contrary to his ownership is being asserted or to lay a foundation for a finding of constructive notice. Pepe v. Aceto,119 Conn. 282, 287, 175 A. 775; Schroeder v. Taylor,104 Conn. 596, 605, 134 A. 63; School District v. Lynch, 33 Conn. 330, 334; 3 Am.Jur.2d, Adverse Possession, 47." Robinson v. Byers, supra,156 Conn. 518. In other words, the requirement that an adverse possession be "notorious" means that the use of the claimant constitutes something that is commonly known; well known.Robinson v. Meyers, supra, 156 Conn. 518. Here the activities of the Catlin family was obvious for all to see and the installation of drainage pipes across the property could not go unnoticed.
"In order to establish adverse possession, the claimant must oust an owner of possession and keep such owner out uninterruptedly for fifteen years by an open, visible, and exclusive possession under a claim of right with intent to use the property as his own and without the consent of the owner.Clark v. Drska, 1 Conn. App. 481, 485, 473 A.2d 325 (1984). The use is not exclusive if the adverse user merely adheres dominion over the property with other users. . . . Such a possession is not to be made out by inference, but by clear and positive proof. . . . In the final analysis, whether possession is adverse is a question of fact for the trier." (Citation omitted.) Whitneyv. Turmel, 180 Conn. 147, 148, 419 A.2d 826 (1980)." Woycik v.Woycik, 13 Conn. App. 518, 520 (1988).
If a claimant holds property under the mistaken belief that CT Page 11753 the land is within his or her deed, and exercises physical dominion over the disputed area, this possession is sufficient to ripen into an adverse possession. Loewenberg v. Wallace,151 Conn. 355, 357, 197 A.2d 634 (1964). "The defendant's intent, which was carried out, was to maintain an exclusive possession . . . . It was immaterial that the intent was not wrongfully motivated, but sprang from an honest, even though mistaken, belief as to the land embraced in their deed of acquisition." Id., 357-58.
The geographical lay of the disputed piece makes it appear to the observer that the area is the front yard of the plaintiffs' dwelling. The Court finds from all the testimony that apparently from 1965 to the present transfer in 1992, all the prior parties' predecessors in title assumed the disputed piece to belong to the plaintiffs and their predecessor in title. Defendants maintain that the claim that plaintiffs are only able to establish adverse possession for 10 years is negated by the doctrine of tacking which, from all the evidence, the court finds applies to the facts of this case.
"The authoritative rule of tacking successive possessions for the acquisition of title after fifteen years is found in Smith v.Chapin, 31 Conn. 530 (1863). See Marquis v. Drost, 155 Conn. 327,332, 231 A.2d 527 (1967) . . . . Privity of estate is not necessary, but rather, privity of possession. It is sufficient if there is an adverse possession continued uninterruptedly for fifteen years whether by one or more persons. This was settled inFanning v. Willcox, 3 Day 258 [1808]. Doubtless the possession must be connected and continuous, so that the possession of the true owner shall not constructively intervene between them; but such continuity and connection may be effected by any conveyance agreement or understanding which has for its object a transfer of the rights of the possessor, or of his possession, and is accompanied by a transfer of possession in fact. . . . Smith v.Chapin, supra, [31 Conn. 530], 531-32 [1863]. Privity of possession is defined as a continuity of actual possession, as between prior and present occupant, the possession of the latter succeeding the possession of the former under deed, grant, or other transfer or by operation of law. Vance v. Wood, 22 Or. 77,85, 29 p. 73 (1892), citing Smith v. Chapin, supra." Matto v. DanBeard, Inc., supra, 15 Conn. App. 479-80.
An adverse claimant may "tack on" his or her actual, exclusive, hostile, open and continuous possession to that of a CT Page 11754 prior adverse possessor to establish the requisite statutory period of fifteen years. Matto v. Dan Beard, Inc., supra,15 Conn. App. 479-80. A party claiming title by adverse possession by virtue of tacking (i.e., combining a predecessor in title's use with the claimant's in order to meet the fifteen year requirement) must prove that the predecessor in title's use was adverse. Marquis v. Dros, 155 Conn. 327, 231 A.2d 527 (1967).
Based on all of the evidence, there is clear and convincing evidence and the plaintiffs have established that a portion of the piece claimed as property they have obtained by adverse possession has clearly been exclusively occupied and used for a period in excess of 15 years by them and/or their predecessors in title.
The court finds that based on clear and convincing evidence presented including all the exhibits and admissions by defendants' predecessors in title, the plaintiffs have established that they and their predecessors in title have exercised adverse possession over a substantial portion of the disputed piece of property.
Accordingly, the court finds that the plaintiffs have sustained their burden of proof to all that portion of the disputed piece lying south of an imaginary line drawn from the northeastern corner of the plaintiffs' dwelling to a ledge at the intersection of the plaintiffs and defendants' driveway and the Grove Street extension as shown on plaintiffs' exhibit K-5, and more properly described as follows:
 Beginning at the southwest corner of said disputed piece which point is an iron pin; thence running northerly N 07 46'00" E twenty (20) feet, more or less; thence easterly in a straight line along an imaginary line drawn in accordance with the above cited description a distance of 50 feet, more or less; thence southerly S 26 02'00" E eleven (11) feet, more or less, along a 30 foot right of way to a pin; thence in a westerly direction N 82 14'00" W 48.36 feet, more or less, to the place of beginning.
 Being the southerly portion of the disputed piece herein as shown on a map dated 4/28/87 CT Page 11755 entitled Proposed Garage Construction Land N/F Patrick G. and Lynne Jablonski, Bounded on the West by land now or formerly of Patrick Jablonski and Lynne M. Hawksley Jablonski; Northerly by the northern portion of said disputed piece, land now or formerly of Richard Wilson and Carol Velletri Wilson; Easterly by a 30 foot right of way; Southerly by land of Patrick Jablonski and Lynne M. Hawksley Jablonski's so called Second Piece.
The Court attaches as attachment A, a partial copy of Plaintiffs' Exhibit A (Map) to which reference may be had for an illustration of the affected area.
The plaintiffs are directed to submit to the Court an A-2 survey for the Court's approval, which will provide a legal description of the property which the Court has described above, as that portion of the disputed piece to which the Plaintiffs have sustained their burden of proof.
Judgment may enter accordingly.
KOCAY, J.
[EDITORS' NOTE: EXHIBIT A MAP) IS ELECTRONICALLY NON-TRANSFERRABLE.]