MARTHA CLARK ET AL. *v.* MARTIN DRSKA
(2305)

TESTO, HULL and DUPONT, Js.

Argued November 10, 1983—decision released April 3, 1984

*Wesley W. Horton*, with whom were *David L. Fineberg, David C. Treiber* and, on the brief, *Charles M. Rice, Jr.*, for the appellants (plaintiffs).

*Mary E. Holzworth*, with whom, on the brief, was *Jackson T. King, Jr.*, for the appellee (defendant).

DUPONT, J. This is essentially an action to quiet and settle title.[1] The plaintiffs' complaint alleges record title and title by adverse possession to certain parcels of land. The defendant pleaded by special defense that the plaintiffs' record title had been acquired by one ousted

---

[1] General Statutes § 47-31, in pertinent part, provides as follows: "ACTION TO SETTLE TITLE OR CLAIM INTEREST IN REAL OR PERSONAL PROPERTY. (a) An action may be brought by any person claiming title to . . . real . . . property . . . against any person who may claim to own the property, or any part of it, or to have any estate in it . . . adverse to the plaintiff, or against any person in whom the land records disclose any interest, lien, claim or title conflicting with the plaintiff's claim, title or interest, for the purpose of determining such adverse estate, interest or claim, title or interest . . . and to clear up all doubts and disputes and to quiet and settle the title to the property. . . .

"(b) The complaint in such action shall describe the property in question and state the plaintiff's claim, interest or title and the manner in which the plaintiff acquired the claim, interest or title and shall name the person or persons who may claim the adverse estate or interest. . . .

"(d) Each defendant shall, in his answer, state whether or not he claims any estate or interest in, or encumbrance on, the property, or any part of it, and, if so, the nature and extent of the estate, interest or encumbrance which he claims, and he shall set out the manner in which the estate, interest or encumbrance is claimed to be derived. . . .

"(f) The court shall hear the several claims and determine the rights of the parties, whether derived from deeds, wills or other instruments or sources of title, and may determine the construction of the same, and render judgment determining the questions and disputes and quieting and settling the title to the property."

of possession,[2] and by counterclaim that he had record title to a certain portion of the realty described in the plaintiffs' complaint and that the plaintiffs claimed an estate in that portion adverse to his title.[3] The court found for the defendant on the complaint and rendered judgment quieting and settling title in the defendant to the two parcels of land as described in his counterclaim. The plaintiffs appeal from that judgment.[4]

The trial court found that the defendant had proved that the defendant's predecessor in title had acquired the land by adverse possession between 1936 and 1958 by ousting a predecessor in title of the plaintiffs. The facts relied on by the court for this conclusion were that the predecessor had walked the boundaries with his children, posted the property, prohibited trespassing on it, had received compensation in 1969 from the plaintiffs' predecessor in title for trees which were removed in 1969, and insisted that a barway be used only with his permission.[5]

---

[2] The trial court correctly concluded that General Statutes § 47-21 did not apply. *Gray* v. *Hudson,* 34 Conn. Sup. 31, 33-34, 375 A.2d 1039 (1974). That statute, in pertinent part, provides that "[a]ny conveyance . . . of land . . . of which the grantor . . . is ousted by the entry and possession of . . . another, unless made to the person in actual possession, shall be void."

[3] During the course of the trial, the defendant alternatively relied on the acquisition of the disputed premises by adverse possession through his father, his grantor, which had begun in 1936 and lasted until 1958 when the property was conveyed to him. Although the defendant did not allege title by adverse possession in his counterclaim, in an action to quiet title, alternative theories of ownership are perforce raised. The defendant himself disclaimed any acts of adverse possession after 1958 and specifically stated in answer to an interrogatory of the plaintiffs that he did not claim to own the property described in his counterclaim by adverse possession. The defendant also disclaimed that he relied on the doctrine of tacking.

[4] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

[5] The plaintiffs claim that the trial court confused the defendant with his father because of the use in the memorandum of decision of incorrect first names as between the defendant and the defendant's father. In the con-

The issues raised by the plaintiffs on appeal are (1) whether the trial court used the wrong standard of proof in determining that the defendant's predecessor in title had acquired title by adverse possession; (2) whether the evidence was insufficient as a matter of law to support a finding of adverse possession and ouster;[6] (3) whether the court must decide where record title lies before considering claims of adverse possession and ouster; (4) whether the court erred in excluding from evidence a certain map proffered as an ancient document; and (5) whether the plaintiffs established record title as a matter of law.[7]

Both parties agree that the standard of proof for proving title by adverse possession is "clear and positive proof."[8] *Roche* v. *Fairfield,* 186 Conn. 490, 498, 442 A.2d 911 (1982); *Whitney* v. *Turmel,* 180 Conn. 147, 148, 429 A.2d 826 (1980); *Wadsworth Realty Co.* v. *Sundberg,* 165 Conn. 457, 462, 338 A.2d 470 (1973).

Ordinarily, whether the elements of adverse possession have been proven are questions of fact for the trial court. *Lucas* v. *Crofoot,* 95 Conn. 619, 623, 112 A. 165 (1921). Ouster and adverse possession are questions of fact and are not reviewable unless the subordinate facts are legally and logically inconsistent or are insufficient

---

text of the memorandum, it is clear that "Martin Drska" was intended to be "John Drska." The name reversal is deemed to be an inadvertent or typographical mistake.

[6] In view of the decision of this court, this issue need not be addressed.

[7] This claim is not considered in detail since the transcript and record indicate that the facts were conflicting as to record title. The plaintiffs did not establish record title as a matter of law and it was for the trial court to make a factual determination after reviewing all of the evidence and assessing the credibility of the witnesses. *Edens* v. *Kole Construction Co.,* 188 Conn. 489, 495, 450 A.2d 1161 (1982).

[8] Unlike *In re Juvenile Appeal,* 189 Conn. 58, 454 A.2d 271 (1983), the standard actually used by the trial court is stated in its memorandum, and the quantum of proof to establish adverse possession is well-settled in this state.

to support the conclusion that they exist. *Lengyel* v. *Peregrin,* 104 Conn. 285, 288, 132 A. 459 (1926). The conclusion, however, that adverse possession exists is reviewable on appeal in order to determine whether the court held the defendant to a less exacting standard than the law requires. See *Lopinto* v. *Haines,* 185 Conn. 527, 441 A.2d 151 (1981).

The trial court stated that "[t]he preponderance of the evidence" established that the defendant's predecessor in title acquired the disputed property by adverse possession between 1936 and 1958. The standard used was erroneous. Even if the court's subsequent words that the predecessor "in an extraordinary degree" continuously asserted ownership and insisted upon his exclusive right to use and enjoy the property are read as though the court used a higher standard than a preponderance of the evidence, that higher standard would apply to only two of the elements of adverse possession. In order to establish adverse possession, the claimant must oust an owner of possession and keep such owner out uninterruptedly for fifteen years by an open, visible and exclusive possession under a claim of right with intent to use the property as his own and without the consent of the owner. *Whitney* v. *Turmel,* supra; *Arcari* v. *Dellaripa,* 164 Conn. 532, 536, 325 A.2d 280 (1973).

The trial court did not find that to an "extraordinary degree" the owner was ousted, the possession of the predecessor was open and visible, the defendant entered under a claim of right, or the possession was without the consent of the owner. It only found that to such a degree the predecessor asserted ownership and insisted on an exclusive right to use and enjoy the property.

The burden of persuasion in an ordinary civil case is met if the evidence induces a reasonable belief that

it is more probable than not that the fact in issue is true. This is the common preponderance of the evidence standard. In certain extraordinary circumstances, however, a higher degree of belief is required. *Dacey* v. *Connecticut Bar Assn.*, 170 Conn. 520, 534, 368 A.2d 125 (1976). The doctrine of adverse possession "is to be taken strictly." *Huntington* v. *Whaley*, 29 Conn. 391, 398 (1860); *Roche* v. *Fairfield*, supra. Adverse possession is a doctrine which grants ownership in derogation of record title since it presupposes that record title is in someone other than the claimant. See *Arcari* v. *Dellaripa*, supra, 536; *Huntington* v. *Whaley*, supra. The measure of proof, therefore, should be of a higher variety than that of most civil cases.

A linguistic morass of standards of proof exists among those civil cases which require a higher standard of proof than the garden variety requiring persuasion by a preponderance of the evidence. Since the trial court erred in not using the test of "clear and positive proof," and since a new trial is necessary for that reason, a discussion of the definition of that standard is appropriate.

The parties have not cited any Connecticut case which equates "clear and positive proof," the standard for adverse possession, with "clear and convincing" proof, the standard for cases such as libel. *Dacey* v. *Connecticut Bar Assn.*, supra. The Supreme Court, however, has stated that "clear, substantial and convincing" proof is the same as "clear and convincing proof." *Lopinto* v. *Haines*, supra, 534.

It could be argued that "clear and positive proof" may be an even higher level of proof than "clear and convincing" proof. Ballentine's Law Dictionary (3d Ed.) simply defines the latter as a degree of proof higher than that of preponderance of the evidence but does not define "clear and positive proof." "Positive" is

defined as "expressed clearly or preemptorily with no doubt" in Webster's Third New International Dictionary, whereas "convincing" is defined as "assuring by proof which so strongly supports that it seems conclusive" in the same source.

According to some legal scholars, there are only three categories of the degrees of proof. They are (1) the fact in issue probably has happened; (2) it is highly probable that the fact in issue has happened; and (3) the fact in issue has most certainly happened. McBaine, "Burden of Proof: Degrees of Belief," 32 Calif. L. Rev. 242, 246–47 (1944). There are three measures of persuasion: proof by a preponderance of the evidence; proof by the stricter standard such as "clear and convincing"; and proof beyond a reasonable doubt. See 9 Wigmore, Evidence (3d Ed.) §§ 2497, 2498. "Clear and convincing" evidence is a standard for which many phrases have been coined by courts to express the same thing, for example, "clear, cogent and convincing," "clear, precise and indubitable," "clear and irresistible," or "convincing beyond reasonable controversy." McBaine, op. cit., 253.

A quagmire of descriptive words for the quantum of proof in the exceptional civil case is not desirable. This court, therefore, holds that "clear and convincing" proof should be equated with "clear and positive" proof. The standard is a degree of belief that is between the belief required in the average civil case and the belief of guilt beyond a reasonable doubt required in a criminal action. Such a burden of persuasion requires a reasonable belief that "the facts asserted are highly probably true [or] that the probability that they are true . . . is substantially greater than the probability that they are false . . . ." *Lopinto* v. *Haines,* supra, quoting *Dacey* v. *Connecticut Bar Assn.,* supra, 537.

Since a new trial is needed because the trial court applied the wrong standard of proof, the remaining claims of error need only be considered to the extent that they will recur upon retrial.

The trial court did not expressly decide whether the plaintiffs had record title.[9] Implicit in its decision, however, is that the defendant did not have record title since it found that the defendant had acquired title by adverse possession. *Arcari* v. *Dellaripa,* supra. The plaintiffs brought suit pursuant to General Statutes § 47-31, seeking a quieting of title. Pursuant to that statute, a court is to "determine the rights of the parties, whether derived from deeds, wills or other instruments or sources of title, and may determine the construction of the same, and render judgment determining the questions and disputes and quieting and settling the title to the property." General Statutes § 47-31 (f).

The statute is construed by this court as requiring a determination of record title before the issue of adverse possession is reached. Such a construction is based on the fact that the statute lists things which fall into the same category, that of written documentation of title. If the words "sources of title" were broad enough to include facts comprising adverse possession, the words "determine the construction of the same" would make no sense. It is the written indicia of title to which the statute refers.

Where a party pursuant to General Statutes § 47-31 seeks to quiet title, the trial court should first determine in which party record title lies, and then determine whether adverse possession has divested the record owner of title. *Cahill* v. *Cahill,* 75 Conn. 522, 526, 54

---

[9] The court stated that the evidence was complicated and confusing and that the sixty-nine deeds and other instruments of title introduced into evidence by the parties were often incomplete, making it almost impossible to establish a marketable record title.

A. 201 (1903). The initial question is whether record title is in one party or the other and, if so, the question becomes whether the record owner was divested of title by clear and positive proof of the adverse possession of the other. *Roche* v. *Fairfield,* 186 Conn. 490, 497, 442 A.2d 911 (1982); *Merwin* v. *Morris,* 71 Conn. 555, 571–72, 42 A. 855 (1899).

The introduction of the ancient map was in the discretion of the court. *State* v. *Piskorski,* 177 Conn. 677, 699, 419 A.2d 866, cert. denied, 440 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). On the basis of the foundation required for the admissibility of the map under the ancient document exception to the hearsay rule, the court did not err in failing to allow it into evidence. The foundation was insufficient to conclude that it was produced from proper custody. *Petroman* v. *Anderson,* 105 Conn. 366, 369–70, 135 A. 391 (1926); *Jarboe* v. *Home Bank & Trust Co.,* 91 Conn. 265, 270, 99 A. 563 (1917).

There is error; the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.