[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff brings this action pursuant to Conn. Gen. Stat. 47a-43 et seq. seeking monetary damages for the defendant's entry and detainer with respect to plaintiff's personal property. The complaint also seeks punitive damages and attorneys' fees under Connecticut's Unfair Trade Practices Act, ("CUTPA"), Conn. Gen. Stat.42-110a et seq.
On June 14, 1990, the plaintiff, a fifteen-year-old mother with one infant, entered into a three-month lease for the third floor apartment in a three-family home at 162 Chestnut Avenue, Waterbury, which is owned by the defendant. The defendant, his wife and two children live in the second floor apartment and the plaintiff's rent was reduced in return for her babysitting the defendant's two children while Mrs. Rodriguez worked.
Mrs. Rodriguez became dissatisfied with the plaintiff's babysitting services and terminated her as a babysitter on or about August 20. The defendant also caused a notice to quit to be served on the plaintiff on August 21. Thereafter, the relationship between the plaintiff and the defendant, and particularly the plaintiff's relationship with Mrs. Rodriguez, became increasingly more acrimonious.
The police were called to the apartment on August 21 on a complaint by the plaintiff that Mrs. Rodriguez was harrassing her. On the morning of September 9, the defendant and Jether Bonet, a friend of the plaintiff and the father of her child, became involved in a fist fight at the property. After the fight, and because of the tension between the parties, the plaintiff took her child and went to her mother's home to spend the night. CT Page 8451
When the plaintiff returned to her third floor apartment on the following day, September 10, she found that much of her personal property had been destroyed. Mattresses and sofa pillows had been slashed, clothes were ripped and strewn about, dishes were broken, the crib was smashed, mirrors were broken, and the refrigerator cord was cut. Food was on the floor and jewelry was missing. The plaintiff left the apartment and returned approximately three days later to retrieve some clothing for herself and her daughter. She planned to return to clean up the mess, but her daughter was later hospitalized and the plaintiff stayed with her mother instead.
On October 4, at approximately 9 o'clock p. m., the plaintiff received a phone call from Margarita Santiago, who lived in a second floor apartment at 164 Chestnut Avenue, next door to the defendant's property. She told the plaintiff that the defendant and others helping him had been placing most of the plaintiff's personal property on the street curb in the rain. The plaintiff and her mother hastily borrowed a truck and retrieved most of the belongings in order to get them out of the rain and to prevent further damage. However, most of the items were later disposed of because they could not be repaired. The plaintiff alleges that the defendant and Mrs. Rodriguez entered her apartment and damaged her personal property on September 10 and then re-entered the apartment on October 4 and put most of the belongings on the street. The defendant admits moving the personal property to the street on October 4, but claims that he did so with permission from the police because the apartment posed a health threat. In addition, he denies committing the damage to the plaintiff's personal property on September 10.
The court finds that the defendant Alvin Rodriguez entered the plaintiff's apartment on September 9 or 10 and damaged her personal property and later re-entered her apartment on October 4 and removed her property to the street, where it was further damaged in the rain. These findings are based on both circumstantial and direct evidence.
When the plaintiff found her personal belongings damaged on September 10, there was no sign of any forced entry into the apartment. The defendant admittedly retained a key to the apartment. In addition, personal property of the defendant which was in the plaintiff's apartment, the stove and a reclining chair, were undamaged despite the substantial damage to almost all of the other items in the apartment. The damage occurred within hours after the defendant had engaged in a fist fight with Jether Bonet, CT Page 8452 the plaintiff's friend. The defendant had already served the plaintiff with a notice to quit and Mrs. Rodriguez, the defendant's wife, admitted that she wanted the plaintiff to move out.
In addition to this circumstantial evidence, the plaintiff offered the testimony of two witnesses who lived at 164 Chestnut Avenue, next door to the premises. Margarita Santiago, the second floor tenant, and Sandra Quinones, the third floor tenant, testified that they saw the defendant and Mrs. Rodriguez destroying personal property of the plaintiff's in the plaintiff's apartment in September. They observed this from their apartment windows while looking in the windows of the plaintiff's apartment. It is true that there were inconsistencies between the testimony of the two women as to the date when they observed the destruction of the plaintiff's property and true also that Margarita Santiago is not an independent witness. She is Jether Bonet's mother and the grandmother of the plaintiff's child. However, their observations were reasonably similar and the court found them both credible.
The final facts supporting the court's findings arise from Mrs. Rodriguez' testimony. She was hostile and defensive in demeanor and demonstrated abundant enmity toward the plaintiff. In her effort to support the defendant's contentions, she contradicted herself and testified inconsistently. She repeatedly testified that the police gave her permission to remove the plaintiff's personal property. She also testified that the police said that the apartment was obviously abandoned and the landlord should clean it out to avoid a health hazard.
However, the police report does not corroborate Mrs. Rodriguez' testimony. It reads, "I advised Mrs. Rodriguez that if indeed Ms. Barriga had left 3 weeks previously abandoning all possessions she could put them on the street and return the apt to health code standards . . ." (Emphasis added.) Mrs. Rodriguez was not a credible witness.
To prove her damages, the plaintiff submitted a two-page document setting forth three categories of loss. The first is a list of personal property which was destroyed. The second is a list of nine items which were left inside the plaintiff's apartment and not retrieved by her because of their damaged condition and because of the police directive that she return during the day CT Page 8453 following October 4 to retrieve them. (The police were too busy the night of October 4 to remain at the premises while these larger items, such as the refrigerator, were removed.) The third category is 4 items of jewelry which were allegedly found stolen by the plaintiff on September 10.
The court finds that the values placed by the plaintiff on her personal property destroyed were reasonable. Many of the items were quite new because they were gifts received at baby showers or gifts from relatives to assist the plaintiff in setting up housekeeping. The existence and value of several of the items was established by receipts or other written documentation. Although the value of the clothing might appear high, the defendant did not challenge the value of the clothing. The only item which will not be allowed is the infant car seat. The testimony on this was that Mrs. Rodriguez threw the car seat in the road during a disagreement with the plaintiff in August. There is no evidence to tie Mr. Rodriguez, the only defendant in this action, to the destruction of the car seat. Nor is that loss within the scope of the complaint because it occurred in August. The plaintiff is entitled to $5289.00 for the defendant's destruction and removal of her personal property.
The plaintiff also claims $685.00 for what she terms "Items Kept by Landlord." This is the list of items which remained in plaintiff's third floor apartment after the evening of October 4. The plaintiff made no attempt to retrieve these items, however, and therefore cannot expect to be compensated by the defendant for them. Some of these items still had value. For example, the plaintiff testified that the refrigerator cord was cut, but she did not claim any other damage to the refrigerator. If plaintiff had retrieved the refrigerator and had a simple repair made, she would not have been deprived of it.
The plaintiff also claims $204.00 for four items of jewelry including baby jewelry, which she found missing or stolen on September 10. Although Mrs. Rodriguez was aware of the existence of the baby bracelet, there is nothing to connect the defendant, Mr. Rodriguez, to the jewelry. There is no evidence that Mr. Rodriguez took the jewelry. Damages for the missing jewelry are not awarded.
The total of compensatory damages awarded is $5,289.00. The plaintiff also seeks double damages pursuant to Conn. Gen. Stat. 47a-46. In Freeman v. CT Page 8454 Alamo Management Co., et al., 24 Conn. App. 124 (1991), the Appellate Court held that double damages may be awarded under Conn. Gen. Stat. 47a-46 only if the plaintiff's case has been proven by clear and convincing evidence.
Clear and convincing evidence is a standard which requires a degree of belief higher than that in the average civil case, which is a fair preponderance of the evidence. The burden of proving facts by clear and convincing evidence requires a reasonable belief that the facts asserted are "highly probably true" or that the probability of their truthfulness is "substantially greater" than the probability that they are false. Clark v. Drska, 1 Conn. App. 481, 487 (1984).
Although the evidence presented is sufficient to meet the fair preponderance of the evidence standard of proof, the court is not persuaded that the evidence meets the clear and convincing standard of proof under the alternative tests of Clark v. Drska, supra. Accordingly double damages under Conn. Gen. Stat.47a-46 cannot be awarded.
The plaintiff also seeks punitive damages and attorneys' fees under CUTPA. The plaintiff contends that the defendant's entry into her dwelling unit and damage to and removal of the plaintiff's personal property constitute a CUTPA violation. "Trade" and "Commerce" as defined under CUTPA include the rental or leasing of real property. Conn. Gen. Stat. 42-110a(4). The defendant's violation of the plaintiff's right of possession and her right to have her personal property remain undamaged in her apartment constitute a violation of public policy, as a result of which the plaintiff has suffered an "ascertainable loss." Conn. Gen. Stat. 42-110g(a). CUTPA violations are frequently found where liability is established in entry and detainer actions, Viera, et al. v. Wirth, et al., 12 CLT 45 (Nov. 17, 1986); John Hay Benevolent Association v. William Gelinas, 16 CLT (Jan. 8, 1990). The court finds the defendant has violated CUTPA.
An award of punitive damages for a CUTPA violation is discretionary with the court. Conn. Gen. Stat.42-110g(a). In this case, the court has found by a preponderance of the evidence that the defendant wilfully entered the plaintiff's apartment, deliberately damaged most of her personal property and later removed her belongings to the street during a nighttime rainstorm. Such CT Page 8455 findings warrant an award of punitive damages. Unlike the double damage award under Conn. Gen. Stat 47a-46, which must be based on clear and convincing evidence, punitive damages under CUTPA may be awarded based on a fair preponderance of the evidence. Punitive damages in an amount equal to plaintiff's attorneys' fees will be awarded as plaintiff has requested.
The plaintiff is also entitled to an award of attorneys' fees under CUTPA. Conn. Gen. Stat. 42-110g(d). With respect to the amount to be awarded, Conn. Gen. Stat. 42-110g(d) provides that the court may award reasonable attorneys' fees "based on the work reasonably performed by an attorney and not on the amount of recovery." The Appellate Court has recently indicated that Johnson v. Georgia Highway Express, Inc., 488 F.2d 714,717-719 (5th Cir. 1974) sets forth the factors to be considered by the trial court to determine the amount of attorneys' fees to be awarded under CUTPA. Hernandez v. Monterey Village Associates Limited Partnership24 Conn. App. 514, 517, n. 1 (1991). Because the plaintiff's submission with respect to attorneys' fees fails to address many of these factors, the court directs the clerk to schedule a further hearing limited to the issue of the amount of attorneys' fees to be awarded.
Judgment is entered for $5,289.00 compensatory damages plus costs. Supplemental judgment for attorneys' fees and punitive damages will be entered after further hearing.
VERTEFEUILLE, J.