[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
Introduction and Factual Background
This case involves a boundary dispute between two properties in West Hartford, Connecticut. The plaintiffs, John and Patricia Moynihan of 10 Old Meadow Road have filed this CT Page 169 suit against Pauline Landsman of 1088 North Main Street to determine who owns a disputed strip at the rear of both properties. The deeds to both parties include the disputed piece.
Both properties come from the same parcel and the parties do not dispute their respective chains of title. Essentially, Isabelle W. Birchard and her husband, Samuel S. Birchard, acquired a parcel of land from Carrie Alice Greene on March 27, 1920 which is recorded at Volume 42, page 648 of the West Hartford Land Records. He quitclaimed his interest to her on October 19, 1926 (recorded at Volume 65, page 539). In 1951, she started to develop her land and conveyed her land, with the exception of her "Homestead" lot, to a corporation, of which she was one of three incorporators, known as Bellcroft Acres, Incorporated, (Volume 242, page 53). On July 8, 1952, Bellcroft reconveyed its interest to Mrs. Birchard and on July 23, 1952, she deeded a new parcel to Bellcroft reserving her Homestead lot again. (Lot 3 on Exhibit 8). Bellcroft conveyed a portion of its land to another corporation, Tumblebrook Acres, Inc. in December 1952.
Tumblebrook Acres, Inc., conveyed Lot No. 6 on a map entitled "Subdivision Plan Old Meadow Estates, Section 1, Property of Tumblebrook Acres Inc., West Hartford, Conn. Scale 1" = 50' February 1954 Morton S. Fine, Civil Engineer" to Belle Stavis, the Moynihan's predecessor in title, on June 23, 1954. One year later a land swap took place which created the present dispute. Utilizing a plot plan prepared by Morton Fine (Exhibit F) Belle Stavis and her husband Harold, deeded a small triangular strip of land on the westerly side of their property to Bellcroft Acres on June 24, 1955 (recorded on July 20, 1955 at Volume 276, page 180). (Exhibit D). On June 23, 1955, Bellcroft Acres, Inc. deeded the contested parcel herein to Belle and Harold Stavis (recorded July 29, 1955 at Volume 276, p. 179). (Exhibit E). The only problem was that Bellcroft no longer had title to the piece — it was in the name of Isabelle Birchard alone as a result of her retention of her Homestead Lot.
Sometime thereafter, Isabelle Birchard died and on September 1, 1961 her executors conveyed her property to Margaret B. Rubino. The southerly property line does not reflect the land swap. Mrs. Rubino deeded her parcel to the defendant and her former husband on October 31, 1979. Two years before, on September 27, 1977, Harold and Belle Stavis had conveyed CT Page 170 their piece, with the new boundary line, to the plaintiffs herein.
 II.
Discussion
 A.
The strip of land in dispute, as shown on Exhibits E and F, is bounded and described as follows:
 NORTHERLY on land now or formerly of Isabelle W. Birchard 131.34 feet; EASTERLY 10.86 feet on land now or formerly of Tumblebrook acres, Incorporated; SOUTHERLY 130.49 feet on land of the grantees; and WESTERLY 18.69 feet on other land of the grantor.
 B.
It is clear that the plaintiffs do not have good record title. Their claim to the parcel can only be established by adverse possession. In Woycik v. Woycik, 13 Conn. App. 518,520 (1988) the court noted:
 "In order to establish adverse possession, the claimant must oust an owner of possession and keep such owner out uninterruptedly for fifteen years by an open, visible, and exclusive possession under a claim of right with intent to use the property as his own and without the consent of the owner." Clark v. Drska, 1 Conn. App. 481, 485, 473 A.2d 325 (1984). "The use is not exclusive if the adverse user merely shares dominion over the property with other users. . . . Such a possession is not to be made out by inference, but by clear and positive proof. . . . In the final analysis, whether possession is adverse is a question of fact for the trier." (Citation omitted.) Whitney v. Turmel, 180 Conn. 147, 148, 429 A.2d 826 (1980). CT Page 171
 C.
Although neighbors for many years, the parties had little contact with one another until the late 1980's when the defendant retained a surveyor to prepare a map to split the lot. The survey indicated that the old fence presumably along the two property lines was indeed not the boundary line. Mrs. Landsman's son Grant, a lawyer, started clearing brush and pruning overgrown wisteria in the disputed area. Having recently (1988) built a deck on the rear of their home, the Moynihan's were alarmed by the thinning out of "their" natural buffer. At this point and on a few other occasions, words were exchanged by the parties. At trial, Mr. Moynihan testified about his maintaining the shrubbery in the disputed parcel and testified when the Rubino's owned the property, the Rubino boys mowed to the other side of the fence
Mrs. Landsman and her son testified that they also maintained their yard, along with the help of a friend, Eileen Connolly (who also testified), which included work in the disputed area. Mrs. Landsman paid all taxes on the parcel.
This court also heard from Frank Stavis, the son of Belle Stavis (now 83 years old and ill) and Frank Stavis (now deceased). He indicated that he lived at his parents' home from 1949 until 1956 when, at 22 years of age he left home. He reviewed certain photographs, noted that the Rubino's lived in back, and stated that a fence separated the properties. On one occasion he called it a split rail fence. He commented on the plantings between the two yards.
 D.
This court visited the site walking both parties' lots. This court noted the fence, the plantings and the grass/moss like area in the disputed parcel at the rear of the Moynihan property.
 E.
The seeds of this dispute were sown in June 1955 before either party owned their property. At that time, the two neighbors (and according to Mr. Stavis, apparently friends) Mrs. Birchard and Mrs. Stavis decided to swap parcels. Mrs. Stavis traded a portion of her land for the disputed parcel. Unfortunately, the deed to the disputed parcel came from Mrs. CT Page 172 Birchard's corporation and not Mrs. Birchard. Even though title was not perfected, from that day in June 1955, there was a recognition of ownership. As Mr. Stavis noted, the fence was the boundary line. Fifteen years from June 1955 is June 1970, a time before either the plaintiff or defendant purchased their property.
After the testimony of Mr. Stavis, there is, of course, no direct evidence until Mr. Moynihan's purchase in 1977. This gap is not fatal to plaintiffs' claim. The first 15 year period is based in part on inference. As clearly noted by now Justice Borden, in Woycik v. Woycik, supra, 523:
 We can conceive of no reason why facts proved to the satisfaction of the trier which logically and reasonably lead to the establishment of other facts — that is, inferences — may not aid in the proof of a claim of adverse possession. Furthermore, none of the Connecticut cases employing the "not to be made out by inference" language of the Huntington-Robinson-Whitney line of cases directly addresses or turns on use of drawing inferences to support a finding of adverse possession. See Roche v. Fairfield, 186 Conn. 490, 498, 442 A.2d 911
(1982); LaPre v. Nibo Films, Ltd., 10 Conn. App. 669, 672 n. 3, 525 A.2d 140 (1987). The rule that an adverse possession claim requires a higher burden of persuasion than is required in the ordinary civil case; Clark v. Drska, 1 Conn. App. 481, 473 A.2d 325 (1984); does not require that the proof establishing the claim be based entirely on direct evidence, as opposed to circumstantial evidence and the logical and reasonable inferences to be drawn therefrom. The law does not impose such a mental straight jacket on the trier of fact in an adverse possession case.
The evidence is clear and positive that the two predecessors intended and did swap land. In doing so, Mrs. Landsman's predecessor intended on giving (and for our purposes, recognized ownership of) the disputed parcel to her neighbor CT Page 173 Belle Stavis. The fact that both Mrs. Birchard and Mrs. Stavis were mistaken as to title is not controlling. See, Loewenberg v. Wallace 151 Conn. 355, 357 (1964); Paletsky v. Paletsky,3 Conn. App. 587, 588 (1985). Unfortunately for both parties, neither Mrs. Birchard's nor Mrs. Stavis' (and Mr. Moynihan's) lawyers found the title problem. Yet, the use of the Stavis/Moynihan parcel remained the same. Its use, both as landscaped and as a wild buffer to the fence line is consistent with the Stavis/Moynihan position of use over an extended time. This court's view revealed mature landscaping and a grass/moss like area that has existed for many years in the westerly half of the disputed parcel. Additionally and consistent with this finding, is that the Landsman property was not improved up to the fence but in a wild state. It should be noted that the easterly half of the disputed parcel was in a fairly overgrown and wild state.
Thus, this court could either start at 1956 and go forward to 1971, or 1977 or even 1988, or start in 1988 and go back to 1973. While there is a lack of testimony during the years after which Frank Stavis left the premises, this court does not believe that this prevents the plaintiffs from meeting their burden. Mr. Moynihan's testimony of the boundary line when he purchased, Mrs. Stavis' deed recognizing the boundary line in 1977, the two year interval when Mr. Moynihan was Mrs. Rubino's neighbor and even the defective deed from Bellcroft Acres all support the logical and reasonable inference that the plaintiffs have proved actual, open, adverse occupancy and use of the disputed parcel.
 F.
The defendants have filed a counterclaim in this case seeking (1) to quiet title and (2) damages for slander of title. To the extent this court has found for the plaintiffs on the adverse possession claim, judgment enters on the first count of the counterclaim for the plaintiffs. The second count, slander of title stems from the filing of the lis pendens on the land records and the allegations of inability to mortgage the property. As previously indicated, both parties purchased their respective properties, receiving a deed covering the disputed parcel. In quieting title, the plaintiff is allowed to file the lis pendens. General Statutes 52-325. This court cannot, therefore, find that it was improper. Additionally, in connection with the damages allegedly suffered by CT Page 174 the defendant, no evidence was introduced that she sought to refinance by excluding this small contested piece. The defendant has not sustained her burden of proof.
 III.
Conclusion
Judgment shall enter for plaintiffs on their complaint and for plaintiffs on the defendant's counterclaim. Title to the parcel described in paragraph 4 of the complaint, attached hereto as Exhibit A, is deemed by adverse possession to be in the plaintiffs.
MARSHALL K. BERGER, JR. JUDGE, SUPERIOR COURT
Exhibit A
Beginning at the northeasterly corner of the homestead lot of the grantees, lying northerly of Old Meadow Road; thence northerly along the easterly line of land of the grantor and the westerly line of land now or formerly of Tumblebrook Acres, Incorporated a distance of 10.86 feet to the southerly line of land now or formerly of Isabelle W. Birchard for a distance of 131.34 feet to a point; thence southeasterly at an angle of 86 35' 12" W a distance of 18.69 feet to the northerly boundary of said homestead lot of the grantee; (this last course is in a line at right angles to the northerly line of Old Meadow Road); thence easterly 130.49 feet along the northerly line of said homestead lot of the grantees to the place and point of beginning. Said tract of land is bounded generally as follows:
 NORTHERLY: on land now or formerly of Isabelle W. Birchard 131.34 feet;
 EASTERLY: 10.86 feet on land now or formerly of Tumblebrook Acres, Incorporated;
SOUTHERLY: 130.49 feet on land of the grantees; and
WESTERLY: 18.69 feet on other land of the grantor.
Said premises are described in a deed dated June 23, 1955 and recorded in the West Hartford Land Records in Vol. 276 at Page 179. CT Page 175