[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action to quiet title to a piece of property located in the town of Columbia. The parcel in dispute is a portion of a larger parcel which the plaintiffs took by warranty deed dated November 13, 1972 and recorded in the land records of the town of Columbia on November 16, 1972.
The deed, in part, purports to convey by estimation sixty (60) acres, more or less which in part is bounded northerly by the Hop River. (In reality, a survey done in 1993 shows the tract to be approximately 27.5 acres).
In 1993 the defendants acquired by quitclaim deed a parcel of land of approximately four (4) acres also bounded northerly by the Hop River, said four (4) acre parcel being portion of the 27.5 acres deeded to the plaintiffs in 1972.
The defendants have established, by a preponderance of the evidence, that they are the title owners of the four (4) acres in dispute. Although the plaintiffs took the parcel by warranty deed said disputed parcel was not within the chain of title to their grantors.
The plaintiffs' claim that, even though record title to the parcel is in the defendants, they, the plaintiffs, have established ownership of the piece by adverse possession.
Following the trial of this case, the Court viewed the property, and the parties submitted post trial briefs.
 Law of Adverse Possession
When, as in this case, record title is established in one party, it becomes necessary to determine if the record owner has been divested of his or her title by adverse possession. Marrin v. Spearow,35 Conn. App. 398, 402, (1994).
The claimants (plaintiffs) must prove by clear and convincing evidence an uninterrupted, open, visible and exclusive possession under a claim of right with intent to use the property as their own and without the CT Page 10140 consent of the owner over a continuous period of 15 (fifteen years).Clark v. Drska, 1 Conn. App. 481, 485 (1984). Clear and convincing proof means clear and positive proof. It is a degree of proof between the proof required in the usual civil case (preponderance of the evidence) and proof beyond a reasonable doubt as required in a criminal prosecution. It requires a reasonable belief that "the facts asserted are highly probably true [or] that the probability that they are true . . . is substantially greater than the probability that they are false. . . ." Clark v. Drska, supra, p. 487.
 Discussion
The Court is satisfied that the plaintiffs have met their burden of proving ownership of the disputed parcel by adverse possession using the standard of clear and convincing evidence.
Much of the testimony proffered was contradictory and reflective of which side called the witness. The Court is convinced that the plaintiffs' witnesses were the more credible, based on their knowledge, specificity of recall, their manner of testifying and the reasonableness of their testimony in light of the other corroborating evidence presented. It is peculiarly the province of the trier of fact to determine the credibility of witnesses based on these enumerated factors, among others.
When the plaintiffs took title in November, 1972, by warranty deed, Mr. Giuliano walked the property with the grantor. He was told that as described by the deed, the property was bounded northerly by the Hop River and included the land now in dispute. There was barbed wire fencing close to the river and in 1972, he repaired the fencing where it was needed. His sons, Nicholas, Jr. and Salvatore credibly testified that they helped string and maintain the fencing thereafter.
There is still fencing along the river, observed during the viewing of the property, although it is now generally in poor condition. (After 1993 when the defendants claimed ownership of the property there was no further maintenance of the barbed wire fencing).
In 1972, after purchasing the property, the plaintiffs moved two (2) horses onto the property and the horses had access to the entire parcel, including the disputed portion. In 1976 the plaintiffs built a home on the portion of property not within the disputed piece, but the property was contiguous to the disputed portion and their animals had access to the entire property.
From 1972 to 1988, the plaintiffs were listed in the Columbia Tax CT Page 10141 Assessor's office as the owners of the entire parcel including all of the disputed area, and paid taxes on the entire parcel. In 1988, a representative of the Bushnell Company indicated to the tax assessor that it was the owner of approximately one (1) acre within the disputed area located in the northwest corner. At that time (which was sixteen (16) years after the plaintiffs used the property as their own), the assessor's records were changed to reflect the one (1) acre as property of Bushnell. However, the plaintiffs still continued their use of the piece substantially as they had for the past sixteen (16) years. After 1988, the plaintiffs continued paying taxes on the entire remaining property until 1993 when, following the survey, ownership of the disputed parcel was changed to the defendants Theodore and Irene Naumec. Payment of taxes is evidence to show the occupier claimed the land as his own.Merwin v. Backer, 80 Conn. 338, 345 (1907), and indeed may be "powerful evidence", Wren v. Parker, 57 Conn. 529, 531 (1889).
Mr. Giuliano, in the 1970's, cleared, stumped, graded and seeded a portion of the disputed area to create a hay field which was mowed and used to feed his horses until 1993. Mr. Giuliano's testimony on this issue was corroborated by the testimony of Sam Pescatello. Mr. Pescatello, a retired zoning agent and building official was hired in 1975 or 1976 to clear a portion of the disputed area by Mr. Giuliano to make a pasture. Using a bulldozer, Mr. Pescatello cleared the hay field, stumped it, and graded it. (He was paid $660 by check dated May 16, 1977 but the work was done prior to 1977).
Sometime during the mid 1970's, the plaintiffs filled in a part of a slough way located in the disputed area in order to create a land bridge across the slough way to access that portion of the property lying between the slough way and the Hop River. Mr. Guiliano also placed fill around an old mill site located in said area.
In approximately 1986, Jesus Melendez, the plaintiffs son-in-law, built a deer stand on the property which is still standing. Mr. Melendez asked Mr. Giuliano for permission to hunt there and obtained a State of Connecticut form which Mr. Giuliano signed authorizing him to hunt on the property.
The Court also finds to be credible testimony that some "no trespassing" and "no hunting" signs were posed on the property by the plaintiff, but they would deteriorate or, in some cases, likely were removed. Some defense witnesses testified they went on the property from time to time and did not see any such signs, although one defense witness (Cheryl Tollmann) did see one sign in 1988, but could not identify whose sign it was. The Court finds that some signs were posted, and whether they were removed or in places not observed by others does not refute CT Page 10142 that finding.
The plaintiffs and their family made use of the property from 1972 to 1993. They kept horses and rode there, they grew hay on it, they fished the Hop River, they hunted, motor-biked, and they attempted to keep hunters off the property (except for their son-in-law), and they snowmobiled there.
One of the considerations in determining adverse possession is the nature of the property involved. This is a rural wooded property. It's primary use would be recreational or, where cleared, a farming operation such as haying. The nature of the use made by the plaintiffs of the property is consistent with an owner's use of it (or of a person claiming ownership by adverse use and possession). Roche v. Town of Fairfield,186 Conn. 490 (1982).
The fact that people came upon the property to fish the Hop River does not disprove or negate the evidence of adverse possession by the plaintiffs. Historically, people would go onto the property to fish, and while Mr. Giuliano made efforts to keep hunters away, he had no objection to fishing in the river. He did, however, chase a couple of fisherman off because they were littering. But traditionally, people would fish in the Hop River in that wooded rural area without getting or asking permission. It would generally be more crowded at the opening of the fishing season and thereafter dwindle to an occasional fisherman.
The indicia of ownership by the plaintiffs and the nature of the adverse possession must be understood as it relates to the location, condition and nature of the property. Lucas v. Ferris, 95 Conn. 619
(1921). That others may have gone on the property is not, under the circumstances of this case, inconsistent with the plaintiffs' exercising exclusive possession and appropriating the property as their own. Norgardv. Busher, 220 OR. 297, 308, 349. (1960).
Further, it is not unreasonable to question whether the defendants had reason to believe that, when they purchased the property in 1993, they were aware of a cloud on the title. They took the property by quit-claim deed for $10,000. The tax assessor's records note that this was a "low sale" transaction. When questioned, the defendant, Theodore Naumec, stated he was not an attorney and not familiar with the significance of a quit-claim deed. The Court finds that to be implausible. He had searched the assessor's records and it is very likely that he knew the plaintiffs' claimed ownership of the property.
To summarize, the Court finds by clear and convincing evidence, the plaintiffs have established the elements of an adverse possession, that CT Page 10143 is, the title owner was ousted of his possession uninterruptedly for a period of more than fifteen years, by an open, visible and exclusive possession by the claimants, without license or consent of the owner and under a claim of right. Ruick v. Twankins, 171 Conn. 149, 155 (1996).
The plaintiffs had an honest belief that they held title which, while not necessary, is evidence of a determination to exclusively possess, hold and retain the property as theirs.
The payment of real estate taxes for sixteen years is powerful evidence upon the question of ownership. Merwin v. Morris, 71 Conn. 555, 575
(1899). This is especially so, given the rural, wooded and somewhat isolated nature of the land, where construction is not reasonably expected and its use is primarily recreational, or farming. "It is human experience that persons do not pay taxes on land or property for which they knowingly have no possessory dominion or the commensurate obligations attendant thereto." Roman v. Julian, 1998 Ct. Sup. 10570, Superior Court, Judicial District of Tolland, 9/21/98, L. Sullivan, J.
The continuous and uninterrupted use of the property for longer than fifteen years without license or consent of the owner, by open, visible and exclusive possession which include the various recreational activities described, the posting of no hunting or no trespassing signs, the clearing of a portion for growing a hay crop, the repairing of perimeter barbed wire fencing among others from 1972 to 1993, when the defendants purchased the property, all support this finding. An adjustment to the tax assessors records was made in 1988 which took one acre of the four acre parcel out of the plaintiffs' tax rolls. But that was still longer than fifteen years even after that the plaintiffs' use of the property was unchanged until 1993.
The adverse possession was not compromised by the fact that others went onto the property to fish, or occasionally hike or swim in the river. Such activity was not inconsistent with the plaintiffs' claim under the circumstances here which include the nature and location of the property, and the custom of the area.
For those reasons, judgment shall enter vesting title to the disputed property in the plaintiffs.
Klaczak, J. CT Page 10144