[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs bring this action to quiet title to a parcel of real estate known as lots 52 and 53 located at the corner of Billings Road and Field Road in the town of Somers, Connecticut. (plaintiffs' exhibit 1). These lots are also known as 349 and 357 Billings Road.
The complaint is in six counts, as follows:
Count 1 alleges the grantor of the property, Doris Percoski, breached her covenants of warranty, seizen and against encumbrances.
Count 2 alleges a conversion by the grantor, Doris Percoski.
Count 3 alleges fraud by the grantor, Doris Percoski.
Count 4 alleges a "CUTPA" violation by the grantor, Doris Percoski.
Count 5 seeks to quiet title as against the defendants Theresa L. O'Connor, Richard P. Percoski and Beverly Percoski by the doctrine of estoppel by deed.
Count 6 alleges the plaintiffs have established ownership of said property by adverse possession.
 Factual Synopsis
The plaintiffs Dorothy Larocque and Wayne Larocque are the daughter and son-in-law of the named defendant Doris Percoski. Doris Percoski died in October 2000 and her daughter Theresa P. O'Connor was appointed the executrix of her estate. In July 2002, Theresa O'Connor was substituted as defendant in place of Doris Percoski. Theresa O'Connor is also a defendant in her own name as are Beverly Percoski and Richard P. Percoski. CT Page 2324
Richard Percoski is Dorothy Larocque's brother, Theresa O'Connor is her sister, and Beverly Percoski is a sister-in-law to the plaintiff, Theresa O'Connor and Richard Percoski. She is the widow of Timothy Percoski.
Constanty Percoski was married to Doris Percoski. Constanty died intestate in 1971 owning property solely in his name. By statute that property passed 1/3 to his widow, Doris Percoski and 1/6 each to his four children. (When his son, Timothy died his 1/6 interest passed to his widow Beverly Percoski.)
On December 12, 1978, Doris Percoski, by warranty deed, transferred title to Lots 52 and 53 to the plaintiffs. This conveyance created a title problem since Doris had only a 1/3 interest with a 1/6 interest each in Dorothy Larocque, Theresa O'Connor, Timothy Percoski and Richard Percoski.
Lots 52 and 53 were unimproved and the purchase price was $18000. $6000 of the purchase price was a gift and $12000 was secured by a purchase money mortgage. The conveyances and mortgages were recorded in the Somers land records and a conveyance tax of $19. 80 was paid. The Larocques made all the payments on the note to Doris Percoski as payee. After the twenty-fourth and final payment, Doris Percoski signed a Release of Mortgage and it was filed on the land records.
The conveyancing deeds were prepared by an attorney. Because the transaction was between mother and daughter and the plaintiff believed her mother had clear title to the property a title search was not done.
In the spring of 1987 Mrs. Larocque learned from Theresa O'Connor there was a title problem. Mrs. O'Connor told her that in order to clear the title, the children would have to sign deeds conveying all their interest on the property which was subject to statutory distribution back to Doris, their mother, and they would then get correcting deeds back. However, the plaintiffs were not assured or satisfied they would get conveyances back for the lots in question, or how Mrs. Larocque's 1/6 interest in other property would be protected. Because of the distrust neither the Larocques nor Richard Percoski executed deeds back to Doris Percoski.
Other facts will be discussed as necessary in dealing with the six counts.
Count 1: Did Doris Percoski breach the covenant of warranty, seizen and against encumbrances contained in her warranty deed? CT Page 2325
The plaintiffs, in their brief, concede that if title is quieted in their favor by either estoppel by deed or adverse possession, the claim for damages "may very well be moot." Since the Court does conclude ownership by adverse possession little comment is necessary on the issues in Count 1. This was not an arms length transaction for full value — 1/3 of the agreed value of the property was a gift to the plaintiffs. Further, as the defendants argue the plaintiffs should have known Doris did not have clear title to the property. The plaintiffs neglected to do a title search (which would have disclosed the Certificate of Devise), and case law suggests a party should not benefit from his own negligence. Beach v. Osborne, 74 Conn. 405 (1902).
Count 2: Was the conveyance from Doris Percoski an act of conversion?
This claim, even if it had validity is barred by the statute of limitations. The deed executed by Doris Percoski took place in 1978, some nineteen years before this action was started. In any event, the evidence does not support conversion on the part of the grantor. The issue of title appears to have been caused by a mistake of fact.
Count 3: Did Doris Percoski commit fraud by misrepresenting she had clear title to the property conveyed to the plaintiffs?
The plaintiffs have not proven Doris Percoski acted fraudulently, i.e., that she knew she did not have clear title to the property. In fact the evidence supports a finding that all parties believed she was the owner. Also, the statute of limitation would bar this claim even if proven.
Count 4: Was there a CUTPA violation?
The plaintiff has not briefed this claim and it is deemed abandoned. In any event, a transaction of this nature between mother and daughter warrants little comment that it falls under the CUTPA provisions.
Count 5: Should title be quieted in the plaintiffs under a theory of estoppel by deed?
The evidence clearly established that once the defect in title became known, the grantor, Doris Percoski, consulted an attorney for advice on resolving the matter. A plan was devised whereby all the heirs would deed their interest in all the properties to their mother, Doris Percoski and in turn, Doris, as the owner, would transfer back clear title in the property in dispute to the Larocques. Theresa O'Connell and Beverly Percoski did, in fact, sign the quit-claim deeds back to Doris and they CT Page 2326 were delivered to Attorney Adams to hold. However, the Larocques and Richard Percoski refused to sign deeds quit-claiming their interest back to Doris and deeds from Theresa O'Connor and Beverly Percoski were never recorded since the anticipated comprehensive settlement did not occur.
Thus the grantors Theresa O'Connor and Beverly Percoski clearly had no intent that the deeds they signed would be effective until and unless all the heirs cooperated in the comprehensive settlement. Mere delivery of the signed deeds to Attorney Adams does not, under the facts of this case, denote an intent to transfer title. The intent to transfer title was conditioned upon all the heirs participating in the settlement. When that did not happen the doctrine of estoppel by deed is not operative. To ascertain whether a grantor intended to deliver a deed, the trier should consider the circumstances surrounding its execution. Lomartira v.Lomartira, 159 Conn. 558 (1970).
Count 6: Have the plaintiffs established ownership by adverse possession?
The plaintiffs have the burden of proving by clear and convincing evidence an uninterrupted open, visible and exclusive possession under a claim of right with intent to use the property as their own and without the consent of the owner over a continuous period of fifteen years. Clarkv. Drska, 1 Conn. App. 481, 485 (1984). Clear and convincing proof means clear and positive proof It is a degree of proof between the proof required in the usual civil case (preponderance of the evidence) and proof beyond a reasonable doubt as required in a criminal prosecution. It requires a reasonable belief that "the facts asserted are highly probably true [or] that the probability that they are true is substantially greater than the probability that they are false . . ." Clark v. Drska,supra, p. 487.
Applying the standard of clear and convincing evidence, the Court is satisfied that the plaintiffs have met their burden of proving ownership of the disputed parcels by adverse possession.
The plaintiffs took title (albeit defective title) to the property in December 1978 by deed duly recorded in the Somers land records and thereafter made all periodic payments on the promissory note. Beginning with the grand list of October 1, 1979 they were listed as the owners of the record. They were assessed property taxes every year thereafter and paid the real estate taxes for twenty-two years thereafter. Payment of property taxes is evidence to show the occupiers claimed the land as their own. Merwin v. Backer, 80 Conn. 338, 345 (1907), and indeed may be "powerful evidence." Wren v. Parker, 57 Conn. 529, 531 (1889). CT Page 2327
Additionally, Janice Steinmetz, the Somers tax assessor since 1979 has asked the plaintiffs for their permission to use the property every September when the "Four Town Fair" is held, to use the property for parking fair-goers' cars. This request has been made annually since at least 1980 and the plaintiffs have given their permission each and every year.
The indicia of ownership by the plaintiffs and the nature of the adverse possession must be understood as it relates to the location, condition and nature of the property. Lucas v. Ferris, 95 Conn. 619
(1921). That others may have gone on the property occasionally is not, under the circumstances of this case, inconsistent with the plaintiffs' exercising exclusive possession and appropriating the property as their own. Norgard v. Busher, 200 Or. 297, 308, 349 (1960).
Exclusive possession may be established by acts, which at the time, considering the nature of the property, comport with activity as would ordinarily be exercised by an owner appropriating land to his own use to the exclusion of others. Roche v. Fairfield, 180 Conn. 490, 502 (1982).
The two lots in question are unimproved lots. After purchasing the property the plaintiffs mowed it regularly, insured it, paid taxes on it and yearly gave permission to the town to use it for parking. The plaintiff, Dorothy Larocque, usually mowed the lots every three or four weeks. In order to get to the lots from her house she would ride her tractor mower past Beverly Percoski's and the O'Connor's houses and it is likely her sisters saw her either going by their homes or mowing the property from time to time. The defendant Richard Percoski lived in New Hampshire and would not have been as likely to be aware of the regular maintenance by his sister Dorothy Larocque.
In fact both Theresa O'Connor and Beverly Percoski have actually seen Dorothy Larocque mowing the lots at times.
Theresa O'Connor testified that she too mowed the property on occasion, usually if Dorothy Larocque was away on vacation, but she was vague as to when or how many times. The Court finds her testimony to be vague and unpersuasive.
The defendants claim the Larocques kept the purchase of the property a secret, but there could be no legal obligation for Dorothy Larocque to tell her sisters. The deed and mortgage were properly recorded, thus their legal notice was on file. As an aside, apparently the mother, Doris Percoski, did not tell the other siblings about the transaction either. CT Page 2328
Any use the other family members made of the property was minimal, and sporadic. Given the nature of the property as unimproved and undeveloped land, the continuing adverse possession by the plaintiffs was not interrupted or compromised by those occasional entries.
And finally the defendants' claim that the plaintiffs took advantage of Doris Percoski and fraudulently induced her to execute the warranty deed is unsupported by the evidence, which included that they paid Doris Percoski for the property.
In summary, the plaintiffs purchased the property in December 1978. Thereafter they paid the taxes, maintained the property as reasonably required given its location and nature. In 1987, when it became known there was a cloud on the title, there was no change in the use of the property.
The plaintiffs continued to pay the taxes and insure it. The town of Somers continued to obtain permission from the Larocques to park cars there every September. The Larocques continued to keep the lots mowed and none of the defendants ever interfered with the plaintiffs' continued and customary use or maintenance of the lots. Accordingly, the use continued uninterrupted, open, visible, and exclusive under a claim of right, with the intent to use the property as their own, without the consent of the other title owners, for longer than fifteen years from December 1978 (well past December 1993).
Judgment shall enter vesting title to the property designated as lots 52 and 53 on a map or plan of lots entitled: "Property of C.A. Percoski west side Field Road Somers, Conn. Megson and Hyyppa Civil Engineers Glastonbury, Conn. dated 5-27-60 (also known as 349 and 357 Billings Road) Somers, Conn."
Klaczak, JTR CT Page 2329